MOORE, J.
| ¡In these two consolidated appeals, the defendants, Lamondre Tucker and Alicia Tucker, appeal their convictions for conspiracy to commit jury tampering, a violation of La. R.S. 14:26 and La. R.S. 14:129. Alicia Tucker appeals her sentence of 15 years. For the following reasons, we affirm the convictions and sentences.
Facts
Lamondre Markes Tucker and his mother, Alicia Ann Tucker, were indicted on the charge of conspiracy to commit jury tampering during jury selection in the first degree murder trial of Lamondre. The defendants contacted a member of the jury *402 venire, Latisha Griffin, in order to influence her testimony regarding the death penalty.
' Lamondre Tucker was charged with first degree murder. Jury selection began on March 14, 2011. On March 17, 2011, Latisha Griffin was questioned as a potential juror during the death penalty qualification phase of jury selection. Griffin, age 22, testified that she knew Lamondre and his mother, Alicia Tucker, from school. She testified that she was opposed to the death penalty. “I don’t feel like anyone should take anyone’s life with the death penalty,” she said. The only circumstance in which she would consider the death penalty, she said, was if the defendant could be released on parole and pose a danger to the public.
Lamondre recognized Griffin during her voir dire testimony. That night, on March 17, 2011, he telephoned his mother, Alicia Tucker, from the Caddo Correctional Center. To prevent the call being traced to him, | ^Lamondre used the PIN number of another inmate to make the call.[1] Nevertheless, Lamondre was observed on video surveillance placing the phone call and the call was recorded and admitted at trial as Exhibit S — 1.
During the phone call, Lamondre told Alicia that he knew one of the potential jurors from school. He identified her as Latisha. As he proceeded to tell his mother what he wanted her to do, he asked her if she knew “Sha-sha’s” (Sh’Taraus Hall) number.
Alicia connected Sh’Taraus to the call so that Lamondre could speak directly to her via a three-way call. Sh’Taraus Hall was Lamondre’s cousin and also a friend of Latisha Griffin. When Sh’Taraus was on the line, Lamondre asked her if she still spoke to Latisha. He explained that Latisha was a potential juror in his case, and he wanted to inform her about the jury selection process. Both he and Alicia explained that if one juror voted “not guilty,” then the death penalty cannot be imposed. Lamondre asked Sh’Taraus to add Griffin to the three-way call so that he could explain the jury selection process and “see what’s up” with Griffin. He said, “I’m really trying to see where she at.”
Hall testified at trial that she connected Griffin to the conversation, but that she could not understand everything that La-mondre had said. Prior to adding Griffin to the call, Lamondre confirmed that his mother was still present on the line.
laGriffin testified that she received a phone call from Hall, Lamondre, and Alicia on the night of March 17, 2011. Griffin was aware that she was not supposed to speak with anyone about the case. La-mondre told Griffin that the prosecution was attempting to “trick” the jurors. He told her that the state would try to exclude her from the jury if she said no to the death penalty, as she had during voir dire on March 17, 2011. Lamondre suggested that Griffin should change her testimony on the following day. He told her to testify that, although she knew him from a “football game or just something simple,” her knowledge of him would not affect her making a decision in his case. During the conversation, he told Griffin that he had *403 access to the jury questionnaire forms and that the potential jurors were not aware that he had access to their personal information, saying “like the one that be talking all crazy, they don’t know I got the papers.” According to Sh’Taraus Hall, La-mondre stated that he knew where all of the potential jurors lived. She heard him tell Griffin that he did not want her to do something that she did not want to do. Griffin and Hall were then disconnected from the call.
Alicia told Lamondre to let Griffin decide what to do, and Lamondre agreed that he did not want Griffin to get into trouble. At the end of the phone call, Alicia indicated that she was coming to visit him that night.
Hall testified that Alicia Tucker called her approximately five minutes after the call above ended on the night of March 17, 2011. Griffin was still on the phone with Hall and included in this second conversation. Alicia told Griffin that she did not want Griffin to do anything that she did not |4want to do. Hall testified that, on March 18, 2011, she received text messages from Alicia Tucker. Alicia instructed Hall to remove Griffin’s number from her phone.
During voir dire on March 18, 2011, Griffin testified that, “under certain circumstances,” she could be “for” the death penalty. She stated that she could consider imposing a life sentence in a case of first degree murder where the victim was pregnant. Eventually Griffin informed the court that she had been contacted by La-mondre on the night of March 17, 2011. She was not seated as a juror in the first degree murder trial of Lamondre Tucker. At the jury tampering trial, she testified that she did not really feel that way and only changed her testimony because of the phone call from the defendant.
Griffin testified that she was afraid after the phone call because she had not heard from Lamondre in a long time and because he indicated that he had access to the potential jurors’ personal information. She feared Alicia Tucker, who was not incarcerated. Due to her fear, Griffin was escorted by police officers when she returned to school following this incident.
Griffin testified that she attempted to speak with the jury coordinator about the phone call before her voir dire testimony continued on March 18, 2011. Stacy Winston, the jury coordinator, testified that Griffin asked to speak with her privately, and that she appeared upset. Griffin was directed to speak with the bailiff, Deputy Darrell Smith, about any concerns. Deputy Smith testified that he was approached by Griffin on March 18, 2011, ^outside of the courtroom. Griffin told him that she lied and needed to tell the truth to the court and attorneys. Deputy Smith informed Judge Ramona Emanuel that Griffin needed to speak with her regarding individual voir dire and possible false statements.
On April 20, 2011, Lamondre Tucker and Alicia Tucker were indicted on the charge of conspiracy to commit jury tampering. Lamondre and Alicia pled not guilty. Several indictments were filed on January 24, 2014 charging each defendant with conspiracy to commit jury tampering on or about March 17, 2011.
Lamondre’s trial began on February 3, 2014, with the selection of a 12-member jury. Latisha Griffin, Sh’Taraus Hall, Stacy Winston, Deputy Darrell Smith, and Deputy Gloria Evans testified on behalf of the state, providing the basis of the facts recited above. Kowanna French was the only witness to testify on behalf of the defense. French was a member of the jury venire in the first degree murder trial of Lamondre Tucker, but was not selected *404 as a juror. French testified that she knew Alexis Tucker, Lamondre Tucker’s sister, but that she was not contacted by any member of the Tucker family regarding the trial. On February 4, 2014, Lamondre was found guilty of conspiracy to commit jury tampering by a unanimous jury verdict.
On February 27, 2014, Lamondre filed a motion for post-verdict judgment of acquittal and a motion for new trial. Lamondre argued that the evidence presented at trial was insufficient to sustain a conviction for conspiracy to commit jury tampering. Specifically, Lamondre argued that 16Griffin was not a “juror” in the first degree murder trial. Lamondre also argued that the jury venire in this case did not represent a fair cross-section of the community because African-Americans and African-American males were an underrepresented group. He asserted that the trial court erred in denying his motion for a subpoena of the jury venire records of Caddo Parish and in failing to quash the jury venire. Lamondre also argued that the trial court erred in admitting the alleged hearsay statements of Alicia Tucker, in failing to allow the introduction of the complete voir dire testimony of Latisha Griffin, and in excluding relevant expert and witness testimony. The motions were denied by the trial court, after a hearing on February 27, 2014, on March 26, 2014. On March 31, 2014, Lamondre was sentenced to 30 years’ imprisonment at hard labor.
Alicia Tucker was tried by jury on August 4-6, 2014. She was convicted as charged by a vote of 11 to 1. She filed motions for .post-verdict judgment of acquittal, a presentence investigation, and for a new trial. The district court denied the motions at the sentencing hearing, and after delays were waived, sentenced Alicia to 15 years at hard labor with credit for time served. A motion to reconsider sentence was denied. This appeal followed.
Because the facts and issues raised are intertwined, we consolidated the two appeals for appellate review.
Discussion
Lamondre urges 26 assignments of error, including sufficiency of evidence claims, errors related to a motion to subpoena prosecutors, a defense expert disclosure, a subpoena for capital trial defense attorneys, a |7motion for a post-indictment preliminary examination, a subpoena for information related to jury pools and veni-res, a motion to recuse prosecutors, a motion to bar the prosecution from making statements indicating personal knowledge of facts, a motion requesting that the jury be instructed on the law of contempt, and a motion that the jury be charged with contempt as an alternative verdict.
In her appeal, Alicia alleges 10 assignments of error, several of which are the same or similar to Lamondre’s assignments of error.

Sufficiency of Evidence Claims: Lamon-dre’s Assignments of Error 1-4; Alicia’s Assignment of Error 1

Both defendants contend that the evidence was insufficient to support their convictions for conspiracy to commit jury tampering because Ms. Griffin was not a “juror” in Lamondre’s murder trial, but rather merely a “prospective juror” in the jury venire. Additionally, Lamondre alleges that the state failed to prove that the purpose of his telephone contact with Latisha Griffin was for the purpose of influencing her, and the state failed to prove any direct or indirect threat to Griffin.
Alicia argues that the state failed to prove that she entered into an agreement with Lamondre for the purpose of jury tampering, and neither she nor Lamondre committed an act in furtherance of that *405 alleged agreement. Both defendants allege that the state failed to prove required elements of the offense, namely, that the purpose of the contact was to influence Ms. Griffin or that any threats were made.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to lathe prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Crossley, 48,149 (La.App. 2 Cir. 6/26/13), 117 So.3d 585.
Both defendants were convicted of conspiracy to commit jury tampering. A “[cjriminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.” La. R.S. 14:26.
The offense of jury tampering is defined by La. R.S. 14:129(A):
Jury tampering is any verbal or written communication or attempted communication, whether direct or indirect, made to any juror in a civil or criminal cause, including both grand and petit jurors, for the purpose of influencing the juror in respect to his verdict or indictment in any cause pending or about to be brought before him, otherwise than in the regular course of proceedings upon the trial or other determination of such cause. To constitute the offense of jury tampering, the influencing or attempt to influence the juror must be either:
(1) For a corrupt or fraudulent purpose, or
(2) By violence or force, by threats whether direct or indirect.
Thus, in order to sustain these convictions, the evidence must be sufficient beyond a reasonable doubt to prove the following elements:
19(1) An agreement between Lamondre and Alicia to commit jury tampering.
(2) An act by either Lamondre or Alicia in furtherance of that agreement.
(3) A direct or indirect verbal or written communication with a juror
(4) for the purpose of influencing the juror in respect to his verdict or indictment ...
(5) for a corrupt or fraudulent purpose, or by threats, violence or force.
The threshold question in this assignment is whether Ms. Griffin was a “juror” for purposes of the offense of jury tampering prohibited by La. R.S. 14:129. Ms. Griffin was a member of the venire and thus a prospective juror, but she was not impaneled or sworn in as a juror in the murder trial of Lamondre. We have found no ease law from Louisiana deciding whether a member of the jury venire is a “juror” under La. R.S. 14:129. ■
The starting point in the interpretation of any statute is the language of the statute itself. State v. Johnson, 2003-2993, p. 11 (La.10/19/04), 884 So.2d 568, 575. The purpose of statutory interpretation is to ascertain legislative intent and the reason or reasons which prompted the legislature to enact the law. State v. Brooks, 2009-2323 (La.10/19/10), 48 So.3d 219; Theriot v. Midland Risk Insurance Co., 95-2895 (La.5/20/97), 694 So.2d 184. “Legislative intent is the fundamental question in all cases of statutory interpre *406 tation; rules of statutory construction are designed to ascertain and enforce the intent of the statute.” Theriot, 95-2895 at 3, 694 So.2d at 186. The best evidence of legislative intent or will is the wording of a statute. State v. Johnson, supra, 884 So.2d at 575.
| ^Criminal statutes are generally subject to strict construction under the rule of lenity. State v. Carouthers, 618 So.2d 880, 882 (La.1993). The principle of lenity is premised on the idea that a person should not be criminally punished unless the law provides a fair warning of what conduct will be considered criminal. State v. Piazza, 596 So.2d 817, 820 (La.1992). The rule is based on principles of due process that no person should be forced to guess as to whether his conduct is prohibited. Piazza, 596 So.2d at 820.[2]
Following these rules of interpretation, we conclude that the term “juror” in La. R.S. 14:129 includes a person summoned as a prospective juror. The statute does not exclude venire members summoned to jury duty, nor does it strictly limit the reach of the statute only to impaneled jurors, including grand and petit jurors. The statute proscribes any verbal or written communication made to any juror for the purpose of influencing his verdict or indictment “in any cause that is pending or about to be brought before him....”. We ascertain the intent of the legislature in enacting this statute is to prevent acts that, by influencing a juror in order to gain an unfair advantage, obstruct the fair and impartial trial of jury cases in our courts, Because any threat or attempt to influence a person summoned for jury duty (i.e., a “prospective juror”) in a pending trial impairs the administration of justice in exactly the same way that justice is impaired by |na threat or influence of an impaneled “juror,” we conclude that the term “juror ’ in the statute includes a “prospective juror” within its reach.
Our conclusion is supported by statutes[3] and jurisprudence from other state and federal courts who have decided this same issue:
In Nobles v. State, 769 So.2d 1063 (1st Dist.Ct.App.Fla.8/30/2000), the appellant appealed his conviction for jury tampering on grounds that the juror he allegedly threatened was only a prospective .juror who had not been selected to serve in his case. Similar to Louisiana’s statute, the Florida statute used only the term “juror” in defining the jury tampering offense. The court of appeal affirmed the conviction, holding that the term “juror” included a person who has received a jury summons and therefore might be selected to decide a case.
Similarly, in United States v. Jackson, 607 F.2d 1219 (8th Cir.1979), the defendant appealed his conviction for jury tampering for his attempt to influence a member of the venire on grounds that the federal statute only proscribed threatening conduct or attempts to influence “any grand or petit juror.” 18 U.S.C. § 1503. Citing *407 United States v. Russell, 255 U.S. 138, 41 S.Ct. 260, 65 L.Ed. 553 (1921)[4], the court held that a venireman comes within the scope of the statute though he was not selected or sworn.
For these reasons, we conclude that Latisha Griffin was a juror for purposes of La. R.S. 14:129.
hiiTo sustain a conviction for “conspiracy to commit jury tampering,” the state must show that the defendant, in agreement with at least one other person, communicated with a juror for the “purpose of influencing the juror in respect to his verdict.” Alicia contends that the evidence of conspiracy is insufficient because there was no evidence of an agreement between her and Lamondre whereby she would contact Sh’Taraus in order for her to contact Ms. Griffin. Lamondre contends he was merely trying to instruct Griffin regarding voir dire, not to influence her verdict, and Alicia contends that she was merely a listener to the conversations between Lamondre, Hall, and Griffin.
After reviewing the transcript of the telephone conversation between La-mondre and Alicia and the testimony of Hall and Griffin regarding the telephone communication between Lamondre, Alicia, Hall and Griffin, we conclude that the evidence is sufficient beyond a reasonable doubt to support the defendants’ convictions for conspiracy. During the initial conversation between Lamondre and Alicia, Lamondre told his mother that he knew a person on the jury, but he was cautious about disclosing her name. He said:
Lamondre: And you won’t believe who one of the jurors is. Now we, I’m, I’m, I’m trying to call and make some arrangement to tell her how the process going to go before it go so she won’t say the wrong thing and they try to keep her off, because I want her to be one of the jurors. I don’t want to call her name, you know what I’m saying.
Alicia: Don’t call it then.
Nevertheless, Lamondre identified the prospective juror anyway to his mother as “Latisha.”
11SLamondre: Yeah, used to like her and everything. She, she know who I am and everything. She’s, I know her real good. Hey, this what I want you to do.
* ⅞ ⅞
But I ain’t — I ain’t tripping that though — you remember Latisha.
Alicia: Un-huh.
Lamondre: Her. Yeah. But check her out. I’m going to — you know Sha-sha’s number?
Alicia immediately connected Sh’Taraus (Sh’Taraus Hall) to the phone call creating a “three-way” call. Alicia remained on the line and listened to the conversation. After Lamondre explained to her his reasons for wanting to contact Griffin, Sh’Taraus added Latisha Griffin to the call. When Latisha got on the line, Lamondre explained that he wanted her to change her testimony regarding opposition to the death penalty. When Latisha did not understand what Lamondre was asking her to “approve,” Alicia interjected on the phone, “[t]he death penalty baby.”
Alicia maintains that this comment was directed to Lamondre although Griffin and Hall were still on the phone. Taken in context, it appears more likely that the comment was directed to Griffin in response to her confusion over what to approve. Irrespective of whom the comment was directed to, however, this remark indi *408 cates that Alicia knew Lamondre intended to influence Latisha Griffin, and she assisted him in accomplishing this purpose by-connecting Sh’Taraus to the phone call. Alicia’s acts of assistance to Lamondre, i.e., connecting Sh’Taraus to the phone call, indicate her tacit agreement to aid Lamondre in his plan. Lamondre’s subsequent communication to Griffin, constituted an act “by one or more of 114such parties” in furtherance of the conspiracy.
It is well settled that it is not necessary that the “act in furtherance of the conspiracy” constitute an illegal act. State v. Powell, 42,540 (La.App. 2 Cir. 10/24/07), 968 So.2d 823. It is of no moment that Alicia did not know.that Sh’Ta-raus would add Latisha Griffin to the line. A reasonable interpretation of the facts indicates she was aware of Lamondre’s intended purpose to contact Sh’Taraus in order to communicate with Latisha. Based on this evidence, viewed in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of conspiracy to commit jury tampering were proven beyond a reasonable doubt.
Lamondre contends that his purpose in calling Latisha Griffin was merely to instruct her on the process of capital jury selection, not to influence her verdict in any way. Lamondre’s actions and statements indicate that he knew that contacting a prospective juror was illegal and that his intent was to influence her testimony for an illicit purpose. His stated in the telephone conversation that he wanted to instruct Griffin about what to say, that is, change her testimony and approve of the death penalty, so that she could be seated on the petit jury. He attempted to avoid detection by using another inmate’s PIN number to place the phone call. He initially avoided identifying Latisha Griffin to his mother. Then, he explained his plan to Sh’Taraus, who he was trying to use as an intermediary to talk to Griffin, and he stated, “I really can’t say too, too, too much, but I can say a little. She’s supposed to be one of my jurors.” Lamon-dre’s remarks in the | ^telephone call indicated that he wanted to get Griffin on his jury for the purpose of avoiding a death penalty sentence. He told her that it could be accomplished by a “not guilty” verdict. The jury, having listened to the entirety of this recorded phone call as well as a reviewing transcript of the conversation and the hearsay testimony of Hall and Griffin, determined that Lamondre’s purpose in communicating with Griffin was to influence her voir dire testimony so that she would be seated on the petit jury and influence the verdict in favor of a life sentence.
Initially, Lamondre was successful in influencing Griffin. On her first day of voir dire testimony, Griffin expressed her strong opposition to the death penalty. The next day, after speaking to Lamondre, Griffin testified that she would be able to apply the death penalty.
Lamondre also argues that the state failed to produce any evidence that an alleged attempt to influence Griffin was made by a threat. Griffin testified that she felt uneasy about the conversation with Lamondre, specifically when he said that he knew the personal information of potential jurors. Griffin was aware that the defendant’s mother, Alicia, was not incarcerated at that time. She feared for her own mother because Lamondre had her mother’s address and she lived alone during the week while she was at school. Griffin was aware that Lamondre was on trial for first degree murder. Her testimony of being afraid was corroborated by Stacy Winston and Deputy Darrell Smith. She was so fearful of Lamondre that she asked police to escort her to school.
*409 |16Even if, for the sake of argument, we concluded that Lamondre’s words or deeds did not amount to threats, the evidence was sufficient to prove the alternative showing to satisfy this element — a corrupt or fraudulent purpose. The evidence shows that Lamondre attempted to influence Griffin to change her testimony for a fraudulent purpose. Namely, he wanted Griffin to lie under oath about her beliefs regarding the death penalty during voir dire in order to get selected on the jury, thereby fraudulently undermining the integrity of the jury selection process and gain an unfair advantage at trial.
We conclude, therefore, that either the jury found that Griffin’s testimony that she felt threatened was credible or that La-mondre’s purpose in influencing Griffin was for a corrupt or fraudulent purpose. This court may not substitute its own appreciation of the evidence for that of the jury-
For these reasons, based on the evidence viewed in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the conspiracy proven beyond a reasonable doubt for both defendants. Accordingly, the sufficiency of evidence assignments of error raised by Alicia and Lamondre Tucker are without merit.
Lamondre’s Assignments of Error 5, 6, 7, and 8
By these assignments of error, Lamon-dre alleges that his rights under the Sixth and Fourteenth Amendments were violated when the court allowed testimony from Sh’Taraus Hall regarding statements made by Alicia during the March 17, 2011, telephone call and a text message from |17Alieia on March 18, 2011. Specifically, Lamondre contends that the statements were inadmissible hearsay. The statements did not qualify as non-hearsay, he maintains, because two elements of the non-hearsay rule of La. C.E. art. 801(D)(3)(b), were not met. He also argues that the text message allegedly sent for the purpose of covering up the alleged conspiracy do not qualify under a hearsay exception because the text message was sent or the statement was made after the conspiracy ended, which occurred when Latisha Griffin was not selected to serve on the jury. Finally, he contends that admission of these statements into evidence did not constitute harmless error.
La. C.E. art. 801(D)(3)(b) defines a non-hearsay statement as a statement offered against a party in which the statement is by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy is established. To introduce a statement under this rule, then, the state must establish three elements: (1) a prima facie case of conspiracy; (2) that the statement was made by the declarant while participating in ’ the alleged conspiracy; and, (3) that the statements were made in furtherance of the objective of the conspiracy. The defendant claims that element (2) was not met with regard to telephone calls and text messages sent by Alicia to Sh’Taraus, and element (3) was not met with regard to Alicia’s telephone call statements.
The state argues that the March 17, 2011, phone call and statements therein involving Alicia, Hall, and Griffin regarding Griffin’s voir dire l1Rtestimony were made in furtherance of the objective of the conspiracy, namely, to place Griffin on the jury and influence her verdict. Regarding the text messages allegedly sent after the conspiracy ended, the state contends that they were sent as part of an ongoing conspiracy and therefore admissible as non-hearsay.
*410 A statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy is not hearsay and is admissible provided that a prima facie case of conspiracy is established. La. C.E. art. 801(D)(3)(b). A prima facie case of conspiracy is presented when the state introduces evidence which, if unrebutted, would be sufficient to establish facts of conspiracy. State v. Lobato, 608 So.2d 739, 746 (La.1992). The statements made by co-conspirators, which are the subject of a hearsay objection, may be considered by the trial court in making its determination as to whether prima facie case of conspiracy has been established. Id. A conspiracy is presumed to continue unless the defendant shows his withdrawal from or termination of that conspiracy. Id. The burden of proof then shifts to the defendant to present evidence of his withdrawal from the conspiracy prior to the time statements were made by his co-conspirators, as the law contemplates that the defendant, against whom the evidence is sought be admitted, be party to the conspiracy. State v. Milton, 1999-2092 (La.App. 4 Cir. 5/17/00), 764 So.2d 1134, 1137-8.
In State v. Milton, supra, the court held that once a drug transaction was completed, any conspiracy by the defendant to distribute narcotics was Incomplete and that any statements made to police by the purchaser after the sale were not admissible against the defendant seller under La. C.E. art. 801(D)(3)(b).
On the other hand, in State v. Mims, 39,757 (La.App. 2 Cir. 6/29/05), 907 So.2d 237, this court determined that the statements sought to be admitted regarding disposal of the murder weapon and losing the Glock magazine were correctly admitted into evidence because the out-of-court statements were made in furtherance of a continuing conspiracy even after the crime had been committed. The defendants continued to work in concert to dispose of a weapon and return the Glock pistol. There was also testimony regarding the defendant’s plans to leave the area. All of those facts formed part of the res gestae of the continuing conspiracy. However, statements by a co-conspirator, later in the evening, that he had “never seen anything like that happen,” although presumably talking about the murders, were not statements made in furtherance of the conspiracy and should not have been admitted. We found that the admission of that statement was harmless error and did not contribute to the verdict.
The standard for determining the admissibility of statements made by co-conspirators is less than that required to convict a defendant of conspiracy to commit an offense. Such statements, if admissible, only constitute evidence which the jury may consider in reaching its conclusion as to whether a defendant did or did not unlawfully participate in a conspiracy to commit an offense beyond a reasonable doubt. Accordingly, a trial court’s determination as to the admissibility of such evidence, whether |2nthe state has made a prima facie showing of a conspiracy and whether a defendant has sufficiently proven withdrawal so as to make his co-conspirators’ statements admissible or inadmissible under La. C.E. art. 801(D)(3)(b), will not be overturned absent clear error. State v. Lobato, supra.
As outlined above, the facts presented sufficiently establish a prima facie case of conspiracy. Lamondre called his mother on the night of March 17, 2011, and Alicia Tucker actively assisted Lamon-dre in communicating with Griffin via Sh’Taraus with the purpose of influencing Griffin’s voir dire testimony and for pur *411 poses of influencing the verdict in the first degree murder trial.
“After the state presents a prima facie case of conspiracy, the burden of proof shifts to the defendant to present evidence showing his withdrawal from the conspiracy prior to the time the statements were made by his co-conspirators.” State v. Mims, supra. The defense contends that any statements made by Alicia during the March 17 telephone call and the text messages sent from Alicia to Sh’Ta-raus Hall were not declarations made in furtherance of the objective of jury tampering. We disagree. The transcript of the telephone conversation and testimony from Hall and Griffin regarding the same indicate that Alicia acted in furtherance of the conspiracy by contacting Sh’Taraus Hall who then contacted Griffin. Additionally, she remained on the line for the entire duration of the conversations between Lamondre and Sh’Taraus and Griffin. When Griffin was confused about what Lamondre wanted her to “approve,” Alicia stated, “the death |21penalty baby.” Thus, regarding Alicia’s statements during the March 17 telephone call from Lamondre, we find that the statements were made while she was participating in the communications in furtherance of the objective of jury tampering. Therefore, the elements of the non-hearsay exception were satisfied.
It remains to be decided if the communications and/or text exchanges with Hall that occurred after Griffin was not selected to the petit jury were also admissible as part of an ongoing conspiracy under Article 801(D)(3)(b) or under La. C.E. art. 801(D)(4), formerly referred to as res gestae. “The conspiracy is presumed to continue unless or until the defendant shows his withdrawal from or termination of the conspiracy. Such affirmative actions include making a clean breast through confession to the authorities as well as notification to the co-conspirators of abandonment or withdrawal.” State v. Lavalais, 95-0320 (La.11/25/96), 685 So.2d 1048, reh’g denied, 12/13/96, cert. denied, Lavalais v. Louisiana, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997), citing State v. Lobato, supra; State v. Mims, supra.
Alicia called Hall a few minutes after the three-way call on March 17, 2011, and advised her not to do anything she did not want to do, and she sent Hall text messages instructing her to “Get that girl number out your phone,” referring to Latisha Griffin’s phone number. The text allegedly occurred after Griffin was not selected as a juror.
By its nature, success in the crime of jury tampering requires that the unlawful communication with a juror be kept secret from authorities. Destroying evidence of such communication with the prospective juror | gjjWouId aid in keeping the communications secret and would be consistent with a conspiracy to carry out the crime. However, defendant contends that once the conspiracy has failed in its objective, the conspiracy ends, and therefore, the statements sought to be admitted are no longer non-hearsay under Art. 801(D)(3)(b).
We do not agree with this rationale. Had Griffin ultimately been selected to serve on the petit jury, the defendant could make the same argument, namely, that the conspiracy had ended because the conspirators had achieved their objective. We do find that the conspiracy terminated simply by virtue of its failure to achieve its ultimate purpose of getting Griffin selected to serve on the petit jury. At least one of the conspirators, namely Alicia, was continuing to conceal the crime by instructing Sh’Taraus Hall to destroy the telephone records. We conclude, as we did in State v. Mims, supra, that the contested com *412 munications were made during and in furtherance of a continuing conspiracy to commit jury tampering even though, at the time the contested communications were sent, Griffin had not been selected to sit on the petit jury.
We also conclude that even if the contested communications with Hall were inadmissible hearsay, reversal of the convictions for jury tampering is not warranted because the error was harmless beyond a reasonable doubt. This evidence of these communications was merely cumulative of other (and much more damaging) evidence of the conspiracy to commit jury tampering, e.g., the transcript and recording of the March 17 telephone conversations and Griffin’s testimony.
^Accordingly, these assignments are without merit.

Lamondre’s Assignments of Error Nos. 9-15; Alicia’s Assignment of Error No. 4

These six assignments concern several rulings by the trial court which the defendant contends combined to deny him the fundamental' right to a defense. The defendant maintains that he was not attempting to influence Latisha Griffin’s verdict, but simply to inform her regarding voir dire.
By assignments No. 9 through 12 the defendant alleges that the trial court erred by denying his motions to subpoena the two prosecutors from his capital murder trial, testimony of a defense expert, and testimony of the defendant’s prior counsel. Alicia Tucker joining in this pretrial motion also raises the same assignment in her assignment of error number 4. Alicia and Lamondre claim that the prosecutors were needed as fact witnesses in order to confirm that them intention during voir dire was not to tell venire members how they should vote if selected to serve on the jury, “just as Mr. Tucker was not trying to tell Ms. Griffin how she should vote.” He also intended to ask the prosecutors the relevant aspects of capital voir dire.
The trial court denied the subpoena motion essentially on grounds that the testimony of the prosecutors regarding voir dire was not relevant to the guilt or innocence of the defendant in jury tampering. The defendants claims that Lamondre’s defense against the charge of jury tampering was that he was merely trying to instruct Ms. Griffin about voir dire and not trying to tell her how she should vote. The prosecutor’s testimony would show, he reasons, that his communications with Griffin were intended to achieve the same purpose as the intention of the prosecutors during their l^vom dire examinations of potential jurors, and thus, the jury could conclude that if the prosecutors were not jury tampering, he was not guilty of jury tampering.
An opportunity to be heard, an essential component of procedural fairness, would be an empty one if the state were permitted to exclude competent reliable evidence. State v. Myers, 583 So.2d 67 (La.App. 2 Cir.1991). Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Even relevant evidence may be excluded if it would be too time consuming or would unnecessarily confuse or excite the emotions of the jury. State v. Myers, supra. Evidence which is not relevant is not admissible. La. C.E. art. 402. The trial judge’s determination regarding the relevancy of offered testimony is entitled to great weight and should not be overturned absent a clear abuse of discretion. State v. Myers, supra; State v. Burrell, 561 So.2d 692 (La.1990). Error may not be predicated upon a ruling which excludes evidence unless a substantial *413 right of the party is affected, and the substance of the evidence was made known to the court by counsel. La. C.E. art. 103(A)(2).
La. C.E. art. 507(A) states:
Neither a subpoena nor a court order shall be issued to a lawyer or his representative to appear or testify in any criminal investigation or proceeding where the purpose of the subpoena or order is to ask the lawyer or his representative to reveal information about a client or former client obtained in the course of representing the client unless the court after a contradictory hearing has determined that the information sought is not protected | gj'rom disclosure by any applicable privilege or work product rule; and all of the following:
(1) The information sought is essential to the successful completion of an ongoing investigation, prosecution, or defense.
(2) The purpose of seeking the information is not to harass the attorney or his client.
(3) With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.
(4) There is no practicable alternative means of obtaining the information.
These articles apply to lawyers serving as prosecutors. La. C.E. art. 507(E).
Although the defendant in a criminal trial has the right to prove his defense, including calling a prosecutor who is otherwise a competent witness, the prosecutor’s testimony must be relevant and material to the theory of the defense, and it must not be privileged, repetitious, or cumulative. State v. Ward, 2011-0438 (La.4/25/11), 62 So.3d 55; State v. Tuesno; 408 So.2d 1269, 1273 (La.1982). The defendant bears the burden of showing by a preponderance of the evidence that the prosecutor’s testimony is essential to the completion of his defense and that the information sought cannot be obtained through other available witnesses. State v. Ward, supra; State v. Bourque, 622 So.2d 198, 216-17 (La.1993); State v. Tuesno, supra.
La. C.E. art. 506 provides a privilege preventing the disclosure of, or testimony regarding, “confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional | ilegal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication.” The client may waive that privilege by voluntarily consenting to the disclosure of the privileged matter. La. C.E. art. 502.
In State v. Ward, supra, the trial court “found that the information sought by the defendant from the assistant attorney general, who had interviewed the victim on one occasion without an investigator present, could be obtained from other sources.” The Louisiana Supreme Court held that the trial judge did not abuse her discretion in finding that the defendant failed to carry his burden of proof.
Under La. C.E. art. 702,
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(1) The expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(2) The testimony is based on sufficient facts or data;
*414 (3) The testimony is the product of reliable principles and methods; and
(4) The expert has reliably applied the principles and methods to the facts of the case.
Trial courts are vested with great discretion in determining the competence of an expert witness, and rulings on the qualification of a witness as an expert will not be disturbed unless there was a clear abuse of |27that discretion. State v. Friday, 2010-2309 (La.App. 1 Cir. 6/17/11), 73 So.3d 913; State v. Berry, 95-1610 (La.App. 1 Cir. 11/8/96), 684 So.2d 439, 456, writ denied, 97-0278 (La.10/10/97), 703 So.2d 603.
As noted above, defendants argue that the testimony of the district attorneys who prosecuted the first degree murder trial was relevant to the capital jury selection process involved in this case and relevant to their defense that Lamondre was simply trying to inform Griffin about the process.
We conclude that the trial court correctly denied the motion to subpoena the two prosecutors in Lamondre’s murder trial for the stated purpose of presenting his defense. The best evidence of the intent of Lamondre’s communication with Latisha is the actual communication, which was available by recording and transcript. The prosecutor’s testimony regarding their intent during voir dire would have little relevance, if any, toward showing Lamondre’s intent in contacting Latisha Griffin. We also agree with the trial court’s conclusion that it would tend to confuse the jury regarding the elements of the offense. Even if the information were relevant to Lamondre’s intended defense, questioning the district attorney’s intent and purpose in questioning potential jurors during voir dire is clearly privileged and covered under the attorney work product privilege. The trial court is afforded great discretion in the admission of evidence and the defendant has made no showing that the trial court abused its discretion in excluding the testimony of the prosecutors and defense counsel in this case. This assignment of error is without merit.
[ ^Regarding the subpoena of his prior defense counsel, Lamondre argues that the testimony of his defense counsel[5] during the first degree murder trial was necessary to confirm that his intent in calling Griffin was merely to inform her of the capital jury selection process. Communications between an attorney and client are clearly protected from disclosure by the attorney-client privilege under La. C.E. art. 506. There is no evidence that La-mondre waived that privilege to allow for the disclosure. Even if the information sought was not privileged, Lamondre has made no showing that the information could not be obtained through other practical means. La. C.E. art. 507. Furthermore, the trial court correctly noted that the interpretation of Lamondre’s intent in placing the phone call was mere argument, rather than fact. It was not unreasonable for the trial court to hold that Lamondre failed to meet his burden of proof and quash the subpoenas of Lamondre’s prior defense attorneys.

Expert Witness Natman Schaye

The trial court may admit the testimony of an expert witness if that testimony will aid the trier of fact in understanding the evidence. Lamondre argues that he intended to question Natman Schaye, an expert in jury selection in death penalty cases, regarding the process of capital jury selection, the tactics used by prosecutors and defense counsel, and the questioning of potential jurors. As noted *415 above and by the trial court, the testimony sought to be elicited from Schaye was mere argument, rather than fact or expert opinion. Further, as also outlined above, evidence regarding |Mthe process of capital jury selection was not relevant to Lamon-dre’s intent in contacting Griffin, and would have been time consuming and potentially confusing to the jury. The defendant has made no showing that the trial court abused its discretion in excluding the testimony of Natman Schaye. This assignment of error is without merit.

Cross-examination & introduction of entire voir dire transcript

In his thirteenth assignment of error, Lamondre and Alicia allege that the' court erroneously ruled that defense counsel improperly impeached witness Griffin even though counsel laid a proper foundation for impeachment. Additionally, during the state’s examination of Latisha Griffin, two excerpts of her voir dire testimony during the first degree murder trial were admitted.- The defendants argue that the trial court erred in failing to allow the admission of the entirety of the voir dire transcripts. He contends that it violated the rule of completeness.
In order to introduce the prior inconsistent statements of a witness, the party seeking introduction must direct the witness’ attention to the statement and give the witness the opportunity to admit the inconsistency. Only after the witness has failed to admit the inconsistency may the proponent introduce the prior statement. Despite their arguments to the contrary, the record reveals that defense counsel failed to lay the proper foundation for admission of the transcripts because Griffin was not afforded the opportunity to admit or deny her prior statements during voir dire. As such, the trial court did not abuse its discretion by excluding the complete transcripts.
lapThe “rule of completeness” dictates that any statement “sought to be used against anyone” must be used in its entirety. In this case, the state utilized excerpts of Griffin’s voir dire transcript, but the entirety of the transcript was not admitted into evidence. However, we conclude that the defendant’s interests were adequately protected and the jury was fully informed of the nature of Griffin’s inconsistent voir dire testimony. State v. Duke, 97-3059 (La.10/30/98), 724 So.2d 730, 732. As such, even if the trial court erred in excluding the entirety of the transcript of Griffin’s voir dire testimony, such error was harmless. This assignment of error is without merit.

Post-indictment preliminary examination

The Louisiana Code of Criminal Procedure provides for a preliminary examination either before or after an indictment. “After an indictment has been found by a grand jury, the preliminary examination shall be limited to the perpetuation of testimony and the fixing of bail.” La. C. Cr. P. art. 296. The conviction of a defendant renders moot any failure to provide a preliminary examination in the absence of prejudice. State v. Collins, 2000-1818 (La.App. 4 Cir. 4/11/01), 787 So.2d 391, writ denied, 2001-1408 (La.4/12/02), 812 So.2d 664. A defendant, who was indicted -by a grand jury, was not prejudiced by the lack of a preliminary examination, where bail was set and there was no indication that it was necessary to perpetuate anyone’s testimony. State v. Lambert, 1998-0730 (La.App. 4 Cir.11/17/99), 749 So.2d 739, writ denied, 2000-1346 (La.1/26/01), 781 So.2d 1258.
13!A preliminary examination, after an indictment is returned by the grand *416 jury, is appropriate only when the perpetuation of witness testimony is necessary. Lamondre argues that the perpetuation of Griffin’s testimony was necessary in June 2011,[6] because she refused to speak with defense counsel, allegedly on the advice of the state’s investigators. He feared that her testimony would be “tainted by the passage of time” and the influence of the state. However, Lamondre fails to cite any supporting evidence that Griffin was under any obligation to speak with defense counsel prior to the trial of this matter. Further, Lamondre has failed to show how he was prejudiced as a result of not having a post-indictment preliminary examination. This assignment of error is without merit.

Lamondre’s Assignments of Error 16, 17, and 18

Assignment of Error No. Sixteen: Mr. Tucker’s petit jury was not drawn from a fair cross-section of the community.
Assignment of Error No. Seventeen: Mr. Tucker presented a prima facie showing of a fair cross-section violation in this case.
Assignment of Error No. Eighteen: The trial court erred in denying Mr. Tucker’s requests for jury selection data, in violation of his rights to compulsory process and due process.
Lamondre and Alicia (by her Assignment of Error No. 5) argue that the jury venire in this matter was the product of a system which excluded a significant portion of African-Americans and African-American males from the jury pool. He notes that 47% of the population of Caddo Parish is African-American, while only 30% of his jury venire was African-American. He submits that reliance on the voter registration rolls to |S2summon a jury veni-re results in a systemic underrepresentation of African-Americans in jury venires. He and Alicia claim the trial court erred in the denial of his subpoena for the jury venire records of Caddo Parish for the years 2006-2011 because it prevented him from asserting claims based upon an extensive set of data. He also argues that the trial court erred in failing to quash his jury venire.
Regarding these assignments of error, the state argues that the trial court correctly denied Tucker’s subpoena because the request for all jury venire records for the years 2006-2011 was untimely, oppressive, and a heavy burden on the Caddo Parish Clerk of Court. The state asserts that, at the time of Tucker’s trial in this matter, the selection of a jury pool was 100% random and completed by a computer, with no human interference. The state also notes that La. C. Cr. P. art. 408.1 specifically allows for the use of voter registration rolls to call a jury venire. Finally, the state argues that the trial court correctly denied Tucker’s motion to quash his jury venire because the defendant failed to show a prima facie case of a systematic exclusion of any distinct population from his jury venire.
The selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial. Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). A general jury venire “shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race.” La. |33C. Cr. P. art. 419(A). The defendant bears the burden of proving the grounds for setting aside the venire. *417 State v. Law, 2012-1024 (La.App. 3 Cir. 4/3/13), 110 So.3d 1271; State v. Lee, 559 So.2d 1310 (La.1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991). That burden of proof requires that the defendant show more than the under-representation of African-Americans on the petit jury venire in order to prove a systematic exclusion of African-Americans. State v. Law, supra; State v. Lee, supra. The law requires that there must not be a systematic exclusion of African-Americans in the source or sources from which jury venires are chosen. However, that does not mean that a defendant is entitled to a petit jury which reflects the population of the community in every respect. Defendants are not entitled to a jury of any particular composition. State v. Law, supra; State v. Lee, supra.
A defendant is entitled to a petit jury selected from a venire that is a representative cross-section of the community. However, a defendant is not entitled to a jury venire of any particular composition or reflective of the community in every respect. In order to succeed in a claim of underrepresentation of any distinct population in a jury venire, the defendant must show a systematic exclusion of that population. At the time of this trial, February 2014, jury venires were randomly selected by a computer from voter registration rolls, with no human influence or interference. La. C. Cr. P. art. 408.1 clearly and specifically allows for the exclusive use of voter registration rolls to call jury venires. Other than mere allegations of impropriety and human interference in the selection of jury | S4venires, Lamondre has failed to show any evidence of a systematic exclusion of any distinct population from his venire. As such, the trial court properly denied his motion to quash the venire.
“A subpoena may order a person to produce ... books, papers, documents, or any other tangible things in his possession or under his control, if a reasonably accurate description thereof is given; but the court shall vacate or modify the subpoena if it is unreasonable or oppressive.” La. C. Cr. P. art. 732. In a case where a subpoena duces tecum was served upon the Shreveport Police Department only one week before scheduled trial and to accumulate subpoenaed material would have taken almost three months and cost several thousand dollars, the quashing of the subpoena as unreasonable was not reversible error. State v. Graham, 422 So.2d 123 (La.1982); see also State v. Johnson, 2000-0680 (La.App. 1 Cir.12/22/00), 775 So.2d 670, writ denied, 2002-1368 (La.5/30/03), 845 So.2d 1066.[7] The motion for a subpoena duces tecum regarding jury venire data for the years 2006-2011 was filed on January 6, 2014, approximately 30 days before this matter was set for trial. The matter was argued on the same date and the request was denied. The defense chose to wait until 30 days prior to trial, creating a heavy burden on the Caddo Parish Clerk of Court. As noted by the trial court, the information sought could have been obtained pursuant to a public records request or subpoena at any time in the two years that this matter was pending. The request for six years worth of complete jury venire |3sdata one month prior to trial was arguably burdensome and oppressive. The trial court did *418 not err in denying the defendant’s request for a subpoena duces tecum.
These assignments are without merit.
Assignment of Error No. Nineteen: The trial court’s failure to grant the defense motion to recuse the prosecutor and prevent his injection of bias and personal knowledge into this case resulted in serious prejudice to Lamondre.
Assignment of Error No. Twenty: In addition to being a necessary witness critical for the defense, the prosecutor demonstrated bias against Lamondre and improperly relied on his personal knowledge of the facts.
Assignment of Error No. Twenty-One: Lamondre was prejudiced by the prosecutor’s actions in this case.
Lamondre alleges that the actions and statements made by the prosecutors during this case indicated their personal knowledge of facts not in evidence, and violated his right to be tried on only the evidence presented. First, he argues that the trial court erred in denying his motion to recuse prosecutors Dale Cox and William Edwards. He asserts that the fact that the prosecutors in this matter were the same prosecutors who represented the state in the first degree murder trial raised an inference of impropriety, indicated that they had a personal interest in this case, and reflected a personal bias against the defendant. Second, Tucker argues that the trial court erred in denying his motion to bar the prosecutors from making statements indicating their personal knowledge of this case and that the prosecutors were, in fact, allowed to make such statements.
The state argues that no evidence has been presented to show that either Dale Cox or William Edwards had a personal interest or bias in this |S6matter. The state further argues that the trial court sustained the defense objections to statements made during opening and closing statements. The state asserts that any statements made prior to the sustaining of the defense objections were not prejudicial, did not influence the jury, and did not contribute to the verdict. As such, any error was harmless.
A district attorney must be re-cused when he has a personal interest in the case. La. C. Cr. P. art. 680. In an action to recuse the district attorney, the defendant bears the burden of showing by a preponderance of the evidence that the district attorney has a personal interest in conflict with the fair and impartial administration of justice. State v. King, 2006-2383 (La.4/27/07), 956 So.2d 562; State v. Marcal, 388 So.2d 656 (La.1980). In State v. King, supra, the recusal of the district attorney was properly ordered after he admitted in his belief that the defendant was responsible for spreading or starting an offensive rumor about him and a member of his family was a factor in his decision to proceed with prosecution against the defendant. The court noted that the district attorney’s personal interest in the cause would lead a reasonable person to question whether he could conduct the defendant’s trial fairly and impartially. Id. In State v. Marcal, supra, the court found no evidence of animosity between the district attorney and defendant.
La. C. Cr. P. art. 774 provides that counsel’s argument “shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” The district attorney is afforded considerable | platitude in making argument to the jury. State v. Mims, supra; State v. Lowery, 33,905 (La.App. 2 Cir. 2/28/01), 781 So.2d 713, writ denied, 2001-1041 (La.2/22/02), 809 So.2d 978. A district attorney may *419 express an opinion about the defendant and/or the evidence presented by the defendant when it is apparent that his opinion is based upon the evidence of record. State v. Mims, supra; State v. Lowery, supra. Commenting on the credibility of the witnesses is proper and within the scope of closing argument. State v. Mims, supra; State v. Wafer, 31,078 (La.App. 2 Cir. 9/23/98), 719 So.2d 156, writ denied, 99-1114 (La.10/1/99), 747 So.2d 1137.
Further, a trial court has broad discretion in controlling the scope of closing arguments. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, 1036; State v. Jones, 2010-0018 (La.App. 4 Cir. 11/10/10), 51 So.3d 827, 833. Even in 'the case of a prosecutor exceeding the bounds of proper argument, a reviewing court will not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the verdict. State v. Wiltz, 2008-1441 (La.App. 4 Cir. 12/16/09), 28 So.3d 554, 558; State v. Harvey, 2008-0217 (La.App. 4 Cir. 5/13/09), 12 So.3d 496, 499. Even where the prosecutor’s statements are improper, a reviewing court should accord credit to the good sense and fair-mindedness of the jurors who heard the evidence. State v. Harvey, supra.
After review, we conclude that the mere fact that Dale Cox previously prosecuted Lamondre for first degree murder is insufficient to show that he maintained any bias or animosity toward Lamondre. The defendant failed to Improve, by a preponderance of the evidence, that district attorney Dale Cox had any personal interest in this matter which would have conflicted with the fair and impartial administration of justice. Regarding the defendant’s request for the recusal of Williams Edwards, Tucker’s arguments are moot because William Edwards did not participate in the prosecution of this matter. The trial court did not err in its denial of the defendant’s motion for disqualification of the prosecuting attorneys.
Tucker makes no argument regarding the denial of his motion to preclude the prosecutors from making statements of personal knowledge or opinion regarding the facts of this case. His arguments focus on the alleged erroneous admission of prejudicial statements during the state’s opening and closing arguments. La. C. Cr. P. art. 774 requires that prosecutorial argument must be limited to the evidence admitted, conclusions of facts, and applicable law.
During opening statements in this case, when describing the changed voir dire testimony of Griffin on March 18, 2011, Mr. Cox stated, “I was the prosecutor, and I thought that was passing strange ... ”. The court overruled a defense objection.
The other statement complained of was made at the end of a lengthy closing argument. Mr. Cox stated:
You know in your gut, you know in your heart, this ain’t right. You can’t do this to people who are called for jury service. You wouldn’t want it done to you. You wouldn’t want to go home tonight and get a call from Lamondre Tucker.
We conclude that the trial court did not err in overruling the objections. While these remarks perhaps may be somewhat overzealous, |S9they constitute permissible advocacy in the prosecutor’s representation of the state.
Even if'the statements were improper, this court will not reverse a conviction absent a showing that the argument influenced the jury and contributed to the verdict. Lamondre has presented no evidence that the jury verdict was influenced by either statement. As outlined above, *420 there was ample evidence, even without the inclusion of the two statements, to sustain a conviction for conspiracy to commit jury tampering. Any error in the allowance of the two statements was harmless. These assignments are without merit.
Assignment of Error No. Twenty-Two: The trial court’s denial of Lamondre’s requested jury instruction and responsive verdict for contempt was error.
Assignment of Error No. Twenty-Three: The trial court erred by denying Lamon-dre’s requested jury instruction on contempt.
Assignment of Error No. Twenty-Four: The trial court erred by refusing to charge the jury with contempt as an alternate verdict.
Assignment of Error No. Twenty-Five: Mr. Tucker was prejudiced by the trial court’s errors.
Both Lamondre and Alicia (Assignment of Error No. 5) argue that the trial court erred by denying requests that the jury be instructed on the law of contempt and be charged with contempt as an alternative verdict. Alicia joined in Lamoridre’s motion requesting a jury instruction on the law of contempt which they contend was correct, pertinent, required no explanation, and was a special charge not otherwise covered by the jury instructions. Lamon-dre alleged that a trial court has a duty to provide any requested jury charges, even if the charge is not a responsive verdict under [40La. C. Cr. P. art. 814. His main defense was that he committed contempt, rather than jury tampering, and that the trial court’s rulings hampered his right to assert that defense.
The state argues that the trial court has no authority to add to the responsive verdicts listed by the legislature in La. C. Cr. P. art. 814. The state notes that jury tampering does not have any responsive verdicts and that the charge of contempt as an alternative verdict would have been inappropriate. The state argues that La-mondre was not prevented from arguing that he did not commit jury tampering.
As a general matter, a trial judge has the duty to instruct jurors as to “every phase of the case supported by the evidence whether or not accepted by him as true,” and that duty extends to “any theory ... which a jury could reasonably infer from the evidence.” La. C. Cr. P. art. 802. In criminal cases, the defendant has the right to submit special written charges for the jury. A “requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.” La. C. Cr. P. art. 807.
The only responsive verdicts, for crimes listed in the article, which may be charged or rendered are enumerated in La. C. Cr. P. art. 814. A trial court is without authority to add to the listed responsive verdicts under La. C. Cr. P. art. 814. State v. Williams, 26,716 (La.App. 2 Cir. 5/10/95), 658 So.2d 708; State v. Moseley, 587 So.2d 46 (La.App. 2 Cir.1991), writ denied, 589 So.2d 1066 (1991); State v. Square, 433 So.2d 104 (La.1983); State v. Thibodeaux, 380 So.2d 59 (La.1980). In State v. Campbell, 95-1409 (La.3/22/96), 670 So.2d 1212, the court held that attempted jury tampering is not a lesser and included responsive offense for the purposes of the statutes governing responsive verdicts. State v. Campbell, supra at 1213. The court found that the return of the unresponsive verdicts constituted error patent and required reversal of convictions. Id.
*421 While La. C. Cr. P. art. 807 establishes a duty on the part of the trial court to give any requested special charges if the charge does not require qualification or explanation, is not included in any general charge, and is correct or pertinent, a charge of contempt is not a responsive verdict to the charge of conspiracy to commit jury tampering. The trial court does not have the authority to add to the legislature’s list of responsive verdicts. The trial court did not err in denying Lamon-dre’s request that the jury be charged with contempt as an alternative verdict. As such, the instruction of the jury on the law of contempt would not have been appropriate as it was not a responsive verdict. Such instruction would have required additional explanation as to its relevance and was not pertinent to the charge of conspiracy to commit jury tampering. The trial court did not err in denying Lamondre’s request that the jury be instructed on the law of contempt. These assignments are without merit.
Assignment of Error No. Twenty-Six: The exclusion of pardoned first felony offenders from the jury venire violated the Louisiana Constitution and the Sixth and Fourteenth Amendments of the United States Constitution.
By this assignment, Lamondre argues that the right to serve on a jury is a fundamental right and that La. C. Cr. P. art. 401(5) violates that | ¿¿fundamental, Constitutional right. He alleges that the exclusion of pardoned first felony offenders violates the Sixth and Fourteenth Amendments and prevented a jury venire drawn from a fair cross-section of Caddo Parish residents.
The state argues that statutes are presumed valid and should be upheld whenever possible. The state argues that the pardon challenging the constitutionality of a statute bears the burden of proof and that the defendant has failed to prove that La. C. Cr. P. art. 401(5) is unconstitutional.
La. C. Cr. P. art. 401(5) provides that, in order to qualify to serve as a juror, a person must “[n]ot be under indictment for a felony nor have been convicted of a felony for which he has not been pardoned by the governor.” A first time felony offender “shall be pardoned automatically upon completion of his sentence without a recommendation of the Board of Pardons and without action by the governor.” La. R.S. 15:572.
Generally, statutes are presumed constitutional, and any doubt is to be resolved in the statute’s favor. State v. Palermo, 2000-2488, 2000-2499 (La.5/31/02), 818 So.2d 745; State v. Brenner, 486 So.2d 101 (La.1986); Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515 (La.1983). The party challenging the constitutionality of a statute bears a heavy burden in proving that statute to be unconstitutional. State v. Palermo, supra; State v. Brooks, 541 So.2d 801 (La.1989); State v. Griffin, 495 So.2d 1306 (La.1986).
Under La. R.S. 15:572, all first felony offenders are automatically pardoned as a matter of law. There is no requirement of any action on the |4Spart of the governor. However, a person must be pardoned by the governor in order to be eligible to serve on a jury under La. C. Cr. P. art. 401(5). That requirement of an extra measure, i.e., pardon by the governor, is presumed to be constitutional. Other than broad allegations, Lamondre provides no evidence that any first felony offender was excluded from his jury venire or petit jury and fails to meet the heavy burden of proof required to show that a statute is facially unconstitutional. This assignment of error is without merit.

*422
Alicia Tucker’s Remaining Assignments of Error

Assignment of Error No. Two: The District Court erred, as a matter of law, in imposing an excessive, cruel and unusual sentence upon Alicia Ann Tucker, considering the particular facts of this case and in denying the defense Motion to Reconsider Sentence.
In her motion to reconsider sentence, Alicia argued that the sentence of 15 years’ imprisonment was out of proportion for a first felony offense, and was excessive considering the mitigating factors, evidence, and lack of presentence investigation. She alleges that the trial court failed to consider the likelihood that she would not commit another crime or the chance of personal rehabilitation. Alicia further argues that her role in any alleged conspiracy was not as significant as Lamondre’s role, that her criminal conduct did not threaten serious harm, and that she acted under strong provocation.
The state argues that jury tampering is a serious crime which affects the entire judicial system. Further, because the crime of jury tampering carries a possible sentence of up to 99 years, Tucker’s sentence of 15 years’ [^imprisonment is relatively light. The state argues that the trial court considered all relevant mitigating and aggravating factors in this case. An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2 Cir. 2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App. 2 Cir. 8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App. 2 Cir. 8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
14r,Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const, art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App. 2 Cir. 1/24/07), 948 So.2d 379.
The trial court is given wide discretion in the imposition of sentences with *423 in the statutory limits. Such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Diaz, 46,750 (La.App. 2 Cir. 12/14/11), 81 So.3d 228.
The penalty provision of La. R.S. 14:129 states that a party who is convicted of jury tampering in a criminal matter in which “the offense charged in the trial for which the jury has been impaneled is punishable by death or life imprisonment, the offender shall be imprisoned at hard labor for not more than ninety-nine years.” A party convicted of criminal conspiracy under La. R.S. 14:26 requires a term of imprisonment “ one-half the longest term of imprisonment prescribed for the offense.” Therefore, in this case, Alicia faced a possible sentence of 49.5 years’ imprisonment for the conviction of conspiracy to commit jury tampering. The record shows |4fithat the trial court took notice of the criteria set forth in La. C. Cr. P. art. 894.1. Despite Alicia’s arguments that the trial court failed to consider the likelihood that she would not re-offend and could be rehabilitated, there is no requirement that the trial court list every aggravating-or mitigating circumstance. The trial court found that “anything lesser than imprisonment would deprecate the seriousness of the defendant’s crime.” The trial court also noted the lack of prior criminal history, the fact that Alicia was employed as a teacher’s aide working with special needs children, her age, that Alicia’s role in the conspiracy was not as significant as La-mondre’s role, and her significant outburst at the reading of the verdict.
Although Alicia maintains that her offense did not create any harm to society, jury tampering is a serious offense which undermines the framework of our judicial system. The sentence imposed, 15 years’ imprisonment, is not grossly out of proportion to the seriousness of the offense. The defendant has not demonstrated any abuse of the trial court’s discretion in sentencing. This assignment is without merit.
Assignment of Error No. Three: The District Court erred, as a matter of law, by prohibiting defense counsel from arguing during closing argument to the jury that the state had not met their burden of proving that Latisha Griffin was a “juror” within the meaning of Louisiana law.
Assignment of Error No.. Eight: The District Court erred, as a matter of law, in denying the defense motion for a mistrial.
Alicia argues that the state failed to show that Griffin was a “juror” for purposes of La. R.S. 14:129, and that defense counsel should have been allowed to make arguments regarding that failure during closing arguments. She asserts that the question whether Griffin was a juror is a question of fact 147to be determined by the jury. She further claims that she was entitled to a mistrial because her right to a fair trial was violated by the prohibition.
The state alleges that closing argument must be confined to the evidence admitted, conclusions of fact, and the applicable law. Because the issue of whether Griffin is a juror under La. R.S. 14:129 is not a question of fact for the jury to determine, it would have been inappropriate for closing arguments. The state further argues that a mistrial is a drastic remedy, which should only be granted on a clear showing of prejudice, which was not made by the defendant in this case.
We find no error in the trial court’s ruling. Whether Ms. Griffin was a “juror” within the meaning of the statute was an issue of statutory interpretation. Statutory interpretation is a question of law, and therefore, not 'a matter for the *424 jury. State v. Cass, 44,411 (La.App. 2 Cir. 8/19/09), 17 So.3d 486; Smith v. State Dept. of Health and Hospitals, 39,368 (La.App. 2 Cir. 3/2/05), 895 So.2d 735, writ denied, 2005-1103 (La.6/17/05), 904 So.2d 701. Since there was no trial error in this ruling, a mistrial was not warranted. Accordingly, these two assignments are without merit.
Assignment ofEm'or No. Five: The District Court erred, as a matter of law, in failing to rule on/or denying nine defense pretrial motions.
Alicia complains of the trial court’s denial of nine defense motions, six of which were assignments of error alleged by La-mondre and considered above in assignments 19, 20, 21, 22, 23, 24, and 25. The remaining three complaints concern a motion for amended bill of particulars, a motion to bar |4Rwitness speculation about the defendant’s intent, and a motion to declare La. C. Cr. P. art. 782(A) and La. Const. Art. I, § 17 unconstitutional.
The defendant did not make any argument related to this assignment of error. On February 27, 2014, the defendant was granted 15 days to file a supplemental brief. This court’s order informed Alicia’s counsel that the record contained the nine motions listed in this assignment of error. On March 19, 2014, the defendant was granted an additional 21 days to file a supplemental brief. Despite two extensions of time to file a supplemental brief, the defendant has not filed any argument on this assignment. Our review of the record in this case and the record in La-mondre’s consolidated appeal does not reveal any error in the trial court’s denial of the motion for amended bill of particulars, motion to bar witness speculation about the defendant’s intent, and motion to declare La. C. Cr. P. art. 782(A) and La. Const. Art. I, § 17 unconstitutional.
Assignment of Error No. Six: The District Court erred, as a matter of law, in denying the defense challenges for cause of prospective jurors Hardy and Goss.
The defendant argues that the trial court should have granted the defense challenge for cause of prospective juror Hardy. Hardy presented a letter from her treating psychiatrist as evidence of diagnoses of anxiety, depression, and ADHD. She was unsure whether her mental condition would affect her ability to serve, and her treating physician recommended that she be excused from jury duty due to her diagnoses. Therefore, Alicia argues, Hardy should have been excused due to her emotional state.
LflAlicia also complains that the trial court should have granted the defense challenge for cause' of prospective juror Goss for bias against her. Goss testified that he would like to hear the defendant’s side of the story, and he believed that an innocent party would testify.
The state argues that the trial court considered the whole voir dire testimony from prospective jurors rather than focusing on a single statement. The record supports denial of the defense challenge of cause for Hardy because her testimony indicated that her anxiety was centered on potential issues of violence that she feared would come up during the case, but which were not applicable in this matter. Goss testified that he would not necessarily need to hear from the defendant in this case and gave no testimony which would indicate that he was unable to apply the law in this case.
The Sixth Amendment of the United States Constitution guarantees the accused the right to a trial by an impartial jury. La. Const, art. I, § 17 guarantees the right to full voir dire examination of prospective jurors and to challenge those jurors peremptorily. The number of chai- *425 lenges is fixed by law. A party may challenge a juror for cause on the ground that “[t]he juror is not impartial, whatever the cause of his partiality” or “[t]he juror will not accept the law as given to him by the court.” La. C. Cr. P. art. 797. A challenge for cause is not warranted where a prospective juror has volunteered an opinion seemingly prejudicial to the defense, but subsequently on further inquiry has demonstrated the ability and willingness to decide the case impartially according to the law and evidence. Id.; State v. Eastin, 419 So.2d 933 (La.1982); State v. Wiley, 614 So.2d 862 (La.App. 2 Cir.1993).
When a defendant uses a peremptory challenge after a challenge for cause has been denied, the defendant, in order to obtain a reversal of his conviction, must show erroneous denial of the challenge for cause and use of all peremptory challenges prior to completion of the jury panel. La. C. Cr. P. art. 800; State v. Anderson, 2006-2987 (La.9/9/08), 996 So.2d 973, 996. A trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror. Such determinations will not be disturbed on review unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Anderson, supra; State v. Lindsey, 2006-255 (La.1/17/07), 948 So.2d 105.
Tucker argues that prospective juror Teresa Hardy should have been excused due to her diagnoses of anxiety, depression and ADHD, as evidenced- by a letter from her treating psychiatrist. The voir dire questioning of prospective juror Hardy was extensive. The letter she presented from Dr. Webb Sentell indicated she was a patient suffering from anxiety, depression, and ADHD. Dr. Sentell recommended that she be excused from service due to emotional stresses. During questioning, Hardy stated that she was nervous during questioning, but she was able to discuss the abduction of a family member. During private voir dire, Hardy testified that she feared the facts of the case would be disturbing and might cause her to have a panic attack. Once she whs assured that the case would not involve any pictures or descriptions of violence, she stated that she would |s1be able to serve. We conclude that, when viewed as a whole, Hardy’s testimony supported denying the defense challenge for cause.
Alicia argues that James Goss, Jr. should have been excused due to an expressed bias against the defendant and the inability to apply the law fairly. The record reveals that Goss stated that he understood that the state had the burden of proving the guilt of the defendant, but that he would like to hear Tucker’s side of the story as well. He then clarified that he would not have to hear her testimony. He referenced a comment by another juror who stated that an innocent person would testify as to that innocence, but that a defendant would not speak if guilty. He stated that he understood that it is up to the defendant to decide whether or not to testify. His testimony indicated that he would be able to apply the law as instructed by the trial court. We conclude that Goss’s testimony supports a denial of the defendant’s challenge for cause.
Alicia does not argue that she used all of her peremptory challenges prior to completion of the jury panel; however, the record shows that she used 12 peremptory challenges and that the state used 9. In addition to proving that all peremptory challenges were used prior to completion of the jury panel, the defendant must show that the trial court erred in denying the challenges for cause. Because the testimony of prospective jurors Hardy and Goss support the trial court’s denial of Alicia’s challenges for cause, and Alicia has not shown, an abuse of the trial court’s *426 discretion in those denials, we conclude that assignment is without merit.
|S2Assignment of Error No. Seven: The District Court erred, as a matter of law, in admitting transcripts of a state’s witness’s previous voir dire testimony.
In this assignment, Alicia argues that the state was allowed to admit transcripts from the voir dire testimony of Griffin, but failed to question Griffin regarding the transcripts. Therefore, the defense was not afforded an opportunity to cross-examine Griffin regarding the transcript. She argues that the transcripts are not self-authenticating public records and should not have been admitted as such. She further argues that the testimony of Griffin in a prior criminal case constitutes inadmissible hearsay.
The state contends that the transcripts of Griffin’s voir dire testimony are a public record, which are self-authenticating under La. C.E. arts. 902 and 905. The transcripts were the best evidence of Griffin’s testimony, and relevant to show her answers to questions posed during voir dire. The state further argues that the defense did not object to the admission of the transcript on the grounds of hearsay, and therefore, Alicia is barred from asserting the objection at this time. The state also points out that Griffin testified at the trial of this matter, and the defense had the opportunity to cross-examine Griffin regarding the transcripts, but chose not to.
In State v. Moity, 159 So.2d 149, 245 La. 546 (La.1968), reversed on other grounds sub nom. Moity v. Louisiana, 379 U.S. 201, 85 S.Ct. 328, 13 L.Ed.2d 339 (1964), the court held that judicial proceedings filed in state and federal courts, as well as a petition filed in another case before the Louisiana Supreme Court, were admissible in a defamation suit provided that the documents were properly certified or found to be certified as true or correct by the custodian or other person authorized to make that [^certification. In Jenkins v. Baldwin, 2000-0802 (La.App. 4 Cir. 8/29/01), 801 So.2d 485, 493, the court held that, because the transcript of the plaintiffs criminal trial was part of the record on criminal appeal, it was filed in the record in the public office of the criminal district court and the Louisiana Supreme Court, and therefore was admissible if properly authenticated under La. C.E. arts. 901-905.
In this case, Alicia complains that the transcript of Griffin’s voir dire testimony in the first degree murder trial of Lamon-dre Tucker should not have been admitted into evidence. That transcript was part of the record in the appeal of Lamondre’s conviction for first degree murder. As in Jenkins, supra, the transcript would be admissible if properly authenticated under La. C.E. arts. 901-905. Because the transcripts were recorded in a public office and were certified as true and correct copies by the custodian, or court reporter, they were admissible as self-authenticating public records in this case. The trial court did not err in admitting the transcripts of Griffin’s voir dire testimony.
The defendant failed to make a contemporaneous objection to the admission of the transcripts as inadmissible hearsay and, therefore, is barred from asserting that argument here. Even if the defendant’s objection had been properly asserted and overruled, a reversal of a conviction is not warranted when the erroneous admission of hearsay evidence is harmless beyond a reasonable doubt, or did not contribute to the verdict. In this ease, even if the contested evidence was an erroneous admission of hearsay evidence, reversal of Tucker’s conviction is not warranted because the error |Mwas harmless. There was sufficient evidence to support a *427 conviction even without inclusion of the transcripts. The recorded March 17 phone call and transcript thereof were introduced into evidence, and Griffin testified regarding the initial phone call from Lamondre and her subsequent change in voir dire testimony. Because the contested evidence was not solely relied upon to support Alicia’s conviction for conspiracy to commit jury tampering, any erroneous admission was harmless error. This assignment is without merit.
Assignment of Error No. Nine: The District Court erred, as a matter of law, in denying jury instructions requested by the defense.
Alicia alleges that the jury did not receive adequate instruction on criminal intent in the context of conspiracy, despite having requested a special charge on that issue. She also argues that the trial court refused to include a special charge on mis-identification in the jury instructions.
The state contends that the law of intent and conspiracy were adequately covered by Jury Instruction C, and, therefore, no special charge was required or appropriate. It also notes that, although Alicia complains that the trial court failed to include a special charge on misidentification as Jury Instruction E, she makes no argument in support of that assigned error. It maintains that the defendant has failed to show that her rights were substantially violated by the omission of either suggested jury instruction.
As a general matter, a trial judge has the duty to instruct jurors as to “every phase of the case supported by the evidence whether or not accepted by him as true,” and that duty extends to “any theory ... which a jury could ^reasonably infer from the evidence.” La. C. Cr. P. art.- 802; State v. Goodley, 2001-0077 (La.6/21/02), 820 So.2d 478, 482. In criminal cases, the defendant has the right to submit special -written charges for the jury. A “requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in . another special charge to be given.” La. C. Cr. P. art. 807. Errors in jury instructions are subject to the harmless error analysis. The failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Spears, 39,302 (La.App. 2 Cir. 9/27/06), 940 So.2d 135, 145; State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004).
The record in this matter contains one set of requested jury instructions filed by the defendant.[8] Proposed Instruction A provided a definition of “conspiracy,” citing State v. Kihnel, 488 So.2d 1238 (La.App. 4 Cir.1986), as follows:
A conspiracy is an “agreement among the conspirators.” A “meeting of minds” is required. Unless at least two people commit the act of agreeing, no one does. When one of two persons merely pretends to agree, the other party, whatever he may believe, is in fact not conspiring with anyone.
LfiLa. C. Cr. P. art. 807 establishes a duty on the part of the trial court to give any requested special charges if the charge does not require qualification or explanation, is not included in any general charge, and is correct or pertinent. How *428 ever, a trial court does not have a duty to give instruction on a theory which could not be reasonably inferred from the evidence. In this case, a review of the jury charges reveals that the jury was instructed on the definition of conspiracy. The main difference between the requested instruction and the instruction given is the lack of comment on the possibility that one of the conspirators may “merely pretend to agree” to the purpose of the conspiracy. There was no evidence presented by which a reasonable juror could infer that Alicia only pretended to agree to the conspiracy to commit jury tampering. As such, the trial court did not err in its refusal to include proposed Instruction A in its charges to the jury.
Proposed Instruction E provided instruction on misidentification when a “key issue in the case is identification.” There was no evidence presented by which a reasonable juror could infer misidentifi-cation of the defendant. In fact, the defendant did not make any argument that she was misidentified. As such, the trial court did not err in its refusal to include proposed Instruction E in its charges to the jury. This assignment is without merit.
Assignment of Error No. Ten: The District Court erred, as a matter of law, in denying the defense Motion for New Trial.
Alicia argues that a finding of merit with respect to any of the assigned errors would support a finding of error in the trial court’s denial of her motion for new trial.
[fl7The state argues that the defendant’s motion for new trial provides no basis upon which a new trial could be granted. Further, the state argues that there cannot be a finding of abuse of the trial court’s discretion when the defendant has provided no detail related to any specific alleged error. A motion for new trial is “based on the supposition that injustice has been done to the defendant, and, unless such is shown to have been the case the motion shall be denied.” La. C. Cr. P. art. 851. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:
(1) The verdict is contrary to the law and the evidence.
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment.
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right. La. C. Cr. P. art. 851.
The decision on a motion for a new trial rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Cox, 2010-2072 (La.11/19/10), 48 So.3d 275.
IfisThe defendant makes no argument regarding this assignment of error. The motion for new trial merely argued that “the verdict is contrary to the law and *429 evidence.” As outlined above, the evidence clearly supported a conviction for conspiracy to commit jury tampering. She further argues that “since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings” was discovered, though she does not provide any details regarding the alleged error or defect. We conclude that there is no evidence that the trial court abused its discretion in the denial of the defendant’s motion for new trial. This assignment is therefore without merit.
CONCLUSION
For the foregoing reasons, the convictions and sentences of the defendants are affirmed.
AFFIRMED.

. Deputy Gloria Evans, of the special investigations unit at the Caddo Correctional Center, testified that each inmate receives a PIN number to use when making phone calls. Inmates are not to use anyone else’s PIN number to place a call. Deputy Evans testified that she investigated a phone call made by Lamondre Tucker on the night of March 17, 2011, and determined that Lamondre did not use his own PIN number to place that call. She stated that inmates will sometimes use another inmate's PIN number to prevent their phone call from being tracked.

. Recent U.S. Supreme Court cases indicate a judicial trend toward limiting application of the rule of lenity to those cases in which an ambiguous criminal statute would otherwise criminalize innocent conduct. In other words, where the ambiguous criminal statute criminalizes conduct that is not malum in se, i.e., inherently wrong, but instead malum pro-hibitum, the rule of lenity applies. In instances where the conduct is inherently wrong or the offender knows his conduct is illegal, the rule of strict construction is not invoked. See Note, "The New Rule of Lenity,” 119 Harv. L.Rev. 2420 (2006).

. The state legislature of Alaska defines the term "juror” as a member of an impaneled jury or "a person who had been drawn or summoned to attend as a prospective juror.” See AS § 11.56.900.

. In Russell, the Supreme Court reversed the dismissal of an indictment charging the defendant with attempt to corrupt a petit juror who had not yet been selected and sworn.

. All three defense counsel filed motions to quash the subpoenas.

. The motion for post-indictment examination was filed on June 26, 2011.

. Defendant's subpoena seeking information about ongoing parking lot robbery investigations was properly quashed as being unreasonable, where it was issued on the first day of testimony and asked that it be fulfilled within 24 hours, and when the request would take about two days to be met and would require hand review of about 1,500 police reports.

. As noted by this court, in its order of February 27, 2015, no additional proposed jury instructions were filed into the record by the trial court or either party.