WILLIAMS, J.
The defendant, Andrew Critton, was charged by bill of indictment with second degree murder, a violation of La. R.S. 14:30.1. Following a jury trial, the defendant was found guilty as charged. He was sentenced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. Defendant appeals his conviction. For the following reasons, we affirm defendant's conviction and sentence and remand for correction of the commitment order.
FACTS
The record shows that on the evening of January 10, 2016, the victim, Sulyn Prince, was attacked and bludgeoned to death after she had returned home from work. The victim's body was then buried in a nearby wooded lot. The next day, the victim's daughter called police when she was unable to contact her mother. In responding to the scene, police officers discovered that Prince was missing and found her house in disarray. Through a window, the officer saw garbage bags and cleaning supplies strewn on the kitchen floor. He then walked behind the house and saw drops of blood leading to the apartment out back. In the apartment, there was blood, water, and broken glass from a wine bottle on the floor, blood spatter on the wall, and smears of blood on a barstool. Outside, there was a drag pattern and wheel marks in the frost on the grass and a blood trail leading from the apartment to a wooded area behind the house.
In a creek under a bridge nearby, officers found numerous items that came from the victim's house, including the victim's uniform, a fire extinguisher, and a broken wine bottle. Two latex gloves, a wheelbarrow, and a shovel were also found near the creek in a wooded area. The victim's DNA was found on the fire extinguisher, the wheelbarrow, and the shovel.
The Shreveport Fire Department K-9 search team was contacted and a cadaver dog alerted to an area of disturbed dirt under several tree limbs in the wooded area behind the victim's house. The state police crime scene unit then began digging in that area and discovered the victim's body.
When Prince's body was removed from the ground, police photographed the body and placed paper bags on the victim's hands to preserve any evidence present. On the back of her head, Prince had a 12 by 10 centimeter laceration with an underlying skull fracture, which was likely caused by the fire extinguisher. The forensic pathologist stated that it was one of the worst skull fractures he had seen that did not involve a car crash. Prince also had several lacerations to her face, bruises around her eye and forehead, a rib fracture, bruises on her arms, and defensive *1286 wounds on her hands consisting of bruises and skin flaps.
Jermaine Johnson, who lived next door to the victim, was the first suspect in this case. Among other evidence, officers found documents containing the victim's name and blood in a trashcan behind Johnson's house. Johnson was charged with second degree murder. However, through the course of the investigation, defendant was developed as another suspect in the case based on DNA evidence. Defendant's DNA was found on one of the latex gloves recovered from the crime scene, on fingernail clippings from the victim, and in the sperm fraction of an oral swab obtained from the victim.
Defendant was arrested and officers searched his residence, which was a basement apartment in his sister's house. In his bedroom, officers located a newspaper containing a story related to the victim's death along with two notes handwritten by defendant. One of the notes contained a poem in which he refers to himself having just been released from jail against all odds and compares himself to a great white shark on the streets that needs to eat. The other note was a list, which read: (1) ski-mask; (2) gloves; (3) straps; (4) tape and rope; and the words "dress in all black." In a burn pile behind the house, police recovered part of a t-shirt, a shoe with the sole removed, and a paper sack with unused condoms. At trial, defendant's sister, Lashelle Holyfield, testified that on the night of the murder, defendant had come home around 9:00 p.m., wearing all black, but left again around 10:30 p.m. The next morning, around 7:00-8:00 a.m., she saw defendant burning something behind the house and he was not wearing a shirt despite the cold weather.
The victim was a correctional officer at Bayou Dorcheat Correctional Center, where defendant had been incarcerated prior to his release in December 2015. Two of his cellmates from Bayou Dorcheat testified that before his release, defendant had talked about hiding evidence of a crime and asked questions about where Prince lived, if she was married or had a dog, and even stated that he "had to get him some of that."
Defendant was charged with second degree murder. Following a jury trial, he was found guilty as charged. Defendant was sentenced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. This appeal followed.
DISCUSSION
Defendant contends his trial counsel was ineffective in failing to request a Daubert hearing regarding the DNA evidence. Defendant argues that defense counsel was put on notice that a Daubert hearing should be conducted because of the clerical error in the lab report and the need for a second test of evidence to implicate defendant.
As a general rule, a claim of ineffective assistance is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because post-conviction relief creates the opportunity for a full evidentiary hearing under La. C.Cr.P. art. 930. State v. Winzer , 49,316 (La. App. 2 Cir. 10/8/14), 151 So.3d 135, writ denied , 2014-2373 (La. 4/22/16), 191 So.3d 1044. However, when the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Winzer, supra .
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by U.S. Constitution Amendment VI. State v. Wry , 591 So.2d 774 (La. App. 2 Cir. 1991). A claim of ineffectiveness of counsel is analyzed under *1287 the two-prong test developed in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
First, to establish that his attorney was ineffective, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that counsel's deficient performance prejudiced his defense and that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland v Washington, supra ; State v. Reese , 49,849 (La. App. 2 Cir. 5/20/15), 166 So.3d 1175, writ denied , 2015-1236 (La. 6/3/16), 192 So.3d 760.
A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Smith , 49,356 (La. App. 2 Cir. 11/19/14), 152 So.3d 218, writ denied , 2014-2695 (La. 10/23/15), 179 So.3d 597. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland v. Washington, supra ; State v. Reese, supra .
The filing and pursuit of pretrial motions is squarely within the ambit of the attorney's trial strategy, and counsel is not required to engage in efforts of futility. State v. Jones , 49,396 (La. App. 2 Cir. 11/19/14), 152 So.3d 235, writ denied , 2014-2631 (La. 9/25/15), 178 So.3d 565.
La. C.E. art. 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and, (4) the expert has reliably applied the principles and methods to the facts of the case.
The standard for accepting expert testimony was set forth in State v. Foret , 628 So.2d 1116 (La. 1993), wherein the supreme court adopted the test set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc. , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under Daubert , before an expert's testimony is admitted, the trial court is required to perform a "gatekeeping" function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. State v. Chauvin , 2002-1188 (La. 5/20/03), 846 So.2d 697 ; State v. Haley , 51,256 (La. App. 2 Cir. 5/24/17), 222 So.3d 153, writ denied , 2017-1230 (La. 4/27/18), 241 So.3d 305.
This "gatekeeping" obligation applies not only to "scientific" testimony, but to all expert testimony. The Daubert non-exclusive list of factors by which to assess the reliability of an expert's opinion include: (1) the "testability" of the scientific theory or technique; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and, (4) whether the methodology is generally accepted in the scientific community. State v. Haley, supra .
Trial courts are vested with great discretion in determining the competence of an expert witness, and rulings on the qualification of a witness as an expert will not be disturbed unless there was a clear abuse of that discretion.
*1288 State v. Farris , 51,094 (La. App. 2 Cir. 12/14/16), 210 So.3d 877, writ denied , 2017-0070 (La. 10/9/17), 227 So.3d 828.
In State v. Celestine , 2011-1403 (La. App. 3 Cir. 5/30/12), 91 So.3d 573, the court rejected the defendant's claim that his attorney was ineffective in failing to request a Daubert hearing on DNA testing that linked the defendant to the crime, as the defendant failed to assert any error in the methodology used by the laboratory that tested the evidence. See State v. Mark , 2013-1110 (La. App. 4 Cir. 7/30/14), 146 So.3d 886, writ denied , 2014-1851 (La. 4/10/15), 163 So.3d 807.
In the present case, Julia Naylor, an expert in forensic DNA analysis with the Louisiana State Police Crime Lab, performed DNA testing on the evidence. Naylor testified that defendant's DNA was found on a latex glove recovered from the crime scene, on fingernail clippings from the victim's right hand, and in the sperm fraction of an oral swab obtained from the victim. However, on cross-examination, Naylor acknowledged that when she initially tested an oral swab, on April 6, 2016, she found a mixture of DNA from two individuals, but could not make a finding relative to defendant because the minor contributor was so low that no comparison could be made. On April 19, 2016, Naylor performed additional testing and found defendant's DNA on the oral swabs. She testified that there were a total of four oral swabs taken from the victim, and that the initial testing was done on one of the four swabs, and the subsequent testing was done on the remaining three swabs. She stated that it was not uncommon for the crime lab to go back and conduct additional testing when there is an indication of a second contributor and there are multiple samples available to test.
Naylor testified that the process of DNA testing is not entirely error free, but her work is reviewed by a quality reviewer, a technical reviewer and an administrative reviewer. She also acknowledged that she submitted a corrected report on March 21, 2017, to correct a clerical error related to an exhibit number.
Based on the evidence presented, defendant failed to prove that his trial attorney was ineffective in failing to request a Daubert hearing as to the DNA evidence. Defendant does not allege any discrepancies or errors in the methodology used by Naylor or the Louisiana State Police Crime Lab. Mere conclusory statements are insufficient to establish a claim of ineffective assistance of counsel. Contrary to defendant's argument, there is no suggestion that the DNA testing in this case was incomplete or suspect in any way. Naylor testified that all of the protocols of the Louisiana State Police Crime Lab were followed in connection with the testing in this case and that she, and the three other people who reviewed her reports, believed the results to be reliable. Also, Naylor testified that the clerical error on the report was merely related to an exhibit number and did not change any of her findings with respect to the DNA profiles that were discovered. In addition, Naylor stated that she did not retest any of the evidence; rather, she went back and tested additional evidence that was available in order to be able to make a comparison. Defense counsel was afforded the opportunity to cross-examine Naylor about the clerical error and the subsequent testing and point out these alleged deficiencies to the jury.
Based upon this record, defendant failed to establish that, even if defense counsel had requested a Daubert hearing, the DNA evidence would have been inadmissible. Thus, there is no showing that counsel's performance was deficient. This assignment of error is without merit.
*1289 Defendant contends the trial court erred in admitting prejudicial gruesome photographs. Defendant argues that because the probative value of these photographs did not outweigh their prejudicial effect, the photographs should have been excluded as they could only have inflamed the passion of the jury.
Under La. C.E. art. 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing, or place depicted. State v. Clark , 2012-0508 (La. 12/19/16), 220 So.3d 583 ; State v. Cook , 46,843 (La. App. 2 Cir. 1/25/12), 86 So.3d 672, writ denied , 2012-0640 (La. 6/22/12), 91 So.3d 969. Even when the cause of death is not at issue, the state is entitled to the moral force of its evidence and postmortem photographs of murder victims are admissible to prove corpus delicti , to corroborate other evidence establishing cause of death, location, placement of wounds, as well as to provide positive identification of the victim. State v. Clark, supra ; State v. Magee , 2011-0574 (La. 9/28/12), 103 So.3d 285, cert. denied , 571 U.S. 830, 134 S.Ct. 56, 187 L.Ed.2d 49 (2013). The cumulative nature of photographic evidence does not render it inadmissible if it corroborates the testimony of witnesses on essential matters. State v. Clark, supra ; State v. Cook, supra .
Thus, photographic evidence will be admitted unless it is so gruesome as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient evidence (i.e., when the prejudicial effect of the photographs substantially outweighs their probative value). State v. Clark, supra . The admission of gruesome photographs is not reversible error unless it is clear that their probative value is substantially outweighed by their prejudicial effect. State v. Magee, supra ; State v. Cook, supra . The trial court has considerable discretion in the admission of photographs, and its ruling will not be disturbed in the absence of an abuse of that discretion. State v. Clark, supra .
During trial in this case, the court admitted into evidence, over defense counsel's objection, nine photographs of the victim's body at the scene of the shallow grave and nine autopsy photographs. The defense first objected to Exhibit S-105, a photograph which depicts the victim's body, from the shoulders up, after she was removed from the shallow grave, and shows blood on the left side of her face, nose, and mouth. The trial court overruled the objection, finding that the state had the right to present its case, and that the photograph was not presented only for inflammatory purposes, but to show the extent of the victim's injuries and where the injuries occurred.
The defense next objected to Exhibits S-141 through S-148, which showed the victim's body at the scene of the shallow grave. Before those photographs were introduced, the trial court reviewed them at a bench conference and the state agreed to withdraw one of the photographs that was repetitive. The trial court found that the remaining photographs were admissible and relevant. At trial, the photographs were identified by Mindy Buratt, an expert in crime scene investigation with the Louisiana State Police Crime Lab. S-141 depicts the victim's arm and hand emerging from the soil in the shallow grave as it was excavated. S-142 is a close-up photograph of the right side of the victim's face partially submerged in the soil during excavation. S-143 is a photograph of the length of the victim's body partially submerged in the soil during excavation. S-144 is a photograph of the victim's naked body lying *1290 on top of a body bag after she had been removed from the ground. This photograph also shows that the victim's hands were bagged to preserve evidence on her fingernails. S-145 and S-147 depict different angles of the injuries and blood on the victim's head, face and eye. S-146 is a photograph of the back of the victim's head, showing that her hair was matted with dried blood and dirt. S-148 shows the defensive wounds on the victim's hands.
The defense also objected to the autopsy photographs, Exhibits S-187 through S-195, based on their "graphic nature." At a bench conference before the photographs were introduced, the state agreed to edit two of the photographs (S-191 and S-195) to cover up images in the background from the autopsy itself. The trial court found that the autopsy photographs, although "graphic," were admissible to show the victim's wounds. Dr. Christopher Tape, the forensic pathologist who performed the autopsy in this case, identified the photographs. S-187 is a photograph of the victim's body on the autopsy table, which shows the dirt, injuries to her head, and the brown paper bags around her hands. S-188 depicts the 12 by 10 centimeter laceration to the back of the victim's head; the scalp is separated from the skull. S-189 is a photograph of the injury to the victim's forehead. S-190 and S-194 are photographs showing the bruises on the victim's right hand. S-191 and S-195 depict the skin flap avulsions, defensive wounds, on the victim's left hand. S-192 and S-193 are photographs of the bruises on the victim's arm and wrist.
After reviewing the evidence, we conclude the trial court did not abuse its discretion in admitting the crime scene and autopsy photographs of the victim. We cannot say the trial court erred in finding that the photographs, although somewhat graphic, were not so gruesome as to unfairly prejudice defendant's case. The crime scene photographs show different angles of the victim's body and depict where the police found the body in relation to the surrounding area. Those photographs also corroborate the testimony that bags were placed on the victim's hands to preserve evidence. The autopsy photographs were relevant in showing the nature, location, and severity of the wounds suffered by the victim. The most graphic photograph, Exhibit S-188, depicting the skull fracture at the back of the victim's head, was necessary to establish the extent of the injury and the cause of the victim's death - traumatic brain injury due to blunt force injuries to the head. The state was entitled to show the particularly brutal nature of the murder and the location where the victim's body was recovered. Therefore, the probative value of the photographs is not substantially outweighed by any prejudicial effect they may have had on the jury. Thus, the trial court properly overruled the defense's objection to the admission of the photographs. This assignment lacks merit.
Pro Se Assignments of Error:
In two assignments, defendant contends his attorney was ineffective in failing to object to the state's introduction into evidence of fingernail clippings from the victim. Defendant argues the evidence was inadmissible because: (1) the fingernail clippings were not sufficiently identified; (2) the chain of custody of the fingernail clippings was not established; and (3) he was denied the right to confrontation because the assistant forensic pathologist who processed the sexual assault kit, John Peno, did not testify at trial.
To admit demonstrative evidence at trial, an object must be identified either by testimony that the object is related to the case or by the chain of custody *1291 from the time of seizure until presentation at trial. For the admission of demonstrative evidence, it suffices if the foundation laid establishes by a preponderance of the evidence that it is more probable than not that the object is relevant to the case. It is not necessary that the evidence as to custody eliminate all possibilities that the object has been altered. A defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. State v. Gay , 48,832 (La. App. 2 Cir. 2/26/14), 136 So.3d 919.
The Confrontation Clause of the Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Crawford v. Washington , 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Sixth Amendment safeguards the defendant's right to confront his accusers and to subject their testimony to rigorous testing in an adversarial proceeding before the trier of fact. California v. Green , 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) ; State v. Dukes , 46,029 (La. App. 2 Cir. 1/26/11), 57 So.3d 489, writ denied , 2011-0443 (La. 3/2/12), 83 So.3d 1033.
Confrontation errors are subject to a harmless error analysis. State v. Norman , 51,258 (La. App. 2 Cir. 5/17/17), 222 So.3d 96, writ denied , 2017-1152 (La. 4/20/18), 240 So.3d 926.
Defendant's argument is based on a document from the Louisiana Forensic Center recording the transfer of custody of the fingernail clippings. That document indicates that the "sexual assault evidence collection kit" was collected by John Peno, one of Dr. Tape's pathology assistants, on January 13, 2016, and transferred to Trooper Driskill on February 25, 2016. However, at trial, Dr. Tape testified that he collected the fingernail clippings from the victim and performed the rape kit.
Although Dr. Tape did not specify whether he or his assistant actually collected the fingernail clippings from the victim, the clippings were sufficiently authenticated and the chain of custody was established by witness testimony. The record supports a finding that it is more probable than not that the DNA-tested fingernail clippings were those collected by Dr. Tape and his assistants, and there is no indication of evidence tampering or that the evidence was compromised in any way. Further, any defect in the chain of custody goes to the weight of the evidence, not its admissibility. Any error regarding the denial of defendant's right to confront John Peno about the fingernail clippings is harmless because the remaining evidence presented by the state, including evidence of defendant's DNA on a latex glove and the oral swabs from the victim, was sufficient to prove his guilt. As such, the fingernail clippings, and the DNA evidence derived therefrom, were properly admitted into evidence at trial. Thus, defendant failed to prove that his attorney was ineffective in failing to object to the admissibility of the victim's fingernail clippings. These assignments of error lack merit.
Defendant contends his trial attorney was ineffective in failing to call his sister, Shameka Grider, as an alibi witness. Defendant argues that Grider's statement to police that defendant went to work with her husband early in the morning of January 11, 2016, is favorable to him because the evidence would have corroborated the testimony of his other sister, Lashelle Holyfield, who testified she could not recall the exact date she saw him burn a brush pile outside of her house.
Although counsel is ineffective when he fails to interview known witnesses, the decision to call or not to call a particular witness is a matter of trial strategy *1292 and is not, per se, evidence of ineffective assistance. State v. Butler , 41,985 (La. App. 2 Cir. 6/20/07), 960 So.2d 1208, writ denied , 07-1678 (La. 5/9/08), 980 So.2d 685.
The record does not support a finding that defendant's attorney failed to conduct an adequate investigation into the facts of this case. In his brief, defendant claims only that Grider's testimony would have corroborated his other sister's trial testimony. We note that Holyfield testified that although she did not know the date, she had seen defendant burning the brush pile on the morning after the murder. Considering the overwhelming evidence of defendant's guilt presented at trial, he has failed to establish that if Grider had testified then the outcome of his trial would have been different. Thus, there is no showing that trial counsel's performance prejudiced the defense. This assignment of error lacks merit.
Defendant contends his attorney was ineffective in failing to object to the state's closing argument. Defendant complains that during the state's closing argument, the prosecutor improperly (1) read a poem that was written by defendant, (2) referred to the issue of race, (3) expressed a personal opinion about suspect Jermaine Johnson and (4) referred to matters not introduced into evidence.
The closing argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the applicable law. The argument shall not appeal to prejudice. The state's rebuttal shall be confined to answering the defendant's argument. La. C.Cr.P. art. 774.
In this case, the record shows that the poem was seized pursuant to a search warrant of defendant's residence and was admitted into evidence during the testimony of the state's handwriting expert. A review of the state's initial closing argument shows that no mention of race was made. However, in closing, defense counsel stated to the jury: "You can't consider, you should not consider, the fact that this defendant is black and the victim is white." In response, the state mentioned race in rebuttal: "Don't convict on sympathy, or bias, or prejudice. This isn't about black and white. Martin Luther King once said, 'If justice isn't for everyone, then justice really isn't for anyone.' I couldn't agree more. Ms. Sulyn Prince deserves justice, justice for everyone. This isn't about black or white. We can agree on that. It's about right and wrong, and this is wrong, wrong, wrong."
Regarding the alleged personal opinion, we note that evidence had been presented during the trial indicating Johnson's possible involvement in the crime. As to matters defendant claims were not in evidence, a ski mask was referenced in Exhibit S-173, the handwritten list found on defendant's dresser. In addition, the comment about burning referred to the fire behind defendant's residence, not to a fire at the crime scene.
Based upon this record, defendant has failed to show that the comments made by the state during closing argument were improper or had any effect on the proceedings. The poem referred to by the state was admitted into evidence at trial and the court had ruled that the state could introduce evidence of defendant's prior incarceration under La. C.E. art. 404(B). The state's reference to race was in rebuttal to defense counsel's closing argument. The state's reference to Jermaine Johnson was based on the evidence presented and constituted a permissible conclusion of fact, not an improper personal opinion. Also, contrary to defendant's claim, the state's references to a ski mask, defendant's absence from his house, the footprints, and *1293 the fire were all drawn from evidence admitted at trial.
Even assuming defense counsel was deficient in failing to object to the state's comments, defendant failed to prove that if counsel had objected, then the result of the proceedings probably would have been different. Thus, this assignment of error is without merit.
Defendant argues that his attorney was ineffective in allowing the state to introduce evidence that was seized from his residence pursuant to a search warrant two months after the crime was committed. Defendant claims that his attorney should have objected to the admission of the handwritten poem and the list found in his house and to the evidence seized from the burn pile in his backyard.
The record shows that all of the above evidence was seized from defendant's residence pursuant to a valid search warrant. The evidence was relevant to show defendant's plan and intent to commit the crime, as well as his actions after the crime. Further, on cross-examination of the officer who executed the search warrant, defense counsel pointed out to the jury that the evidence was seized two months after the crime occurred. In addition, defendant's attorney had objected to admission of the poem and the list at the 404B hearing and at trial. After reviewing the record, we find that defendant has failed to allege any facts which would require suppression of the evidence seized from his house. Therefore, he failed to show that a motion to suppress should have been granted or that his attorney was deficient in failing to file such a motion. This assignment of error is without merit.
Defendant contends his attorney was ineffective in filing the motion for change of venue without his consent. Defendant argues that this violated his right to consult with his counsel and the right to a fair and impartial trial in the parish where the offense occurred.
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending. La. C.Cr.P. art. 622.
In this case, defense counsel filed a motion for change of venue in September 2016, based on prejudicial pretrial publicity. Defendant was not present at the hearing on the motion. The state did not object, and the trial court granted the motion. The venue was changed from Claiborne Parish to Bienville Parish.
Although it is unclear from the record whether defense counsel discussed the motion for change of venue with defendant before filing the motion, defendant has not shown any prejudice from his attorney's actions. We note that defendant never raised an objection to the venue change prior to trial. Further, defense counsel's decisions as to which motions to file form a part of trial strategy, to which this Court affords great deference. Thus, this assignment of error lacks merit.
Defendant also argues that his attorney was ineffective in failing to file a motion to suppress the statement he made during his custodial interrogation. Defendant claims that after he was advised of his rights and indicated he did not want to answer any questions, he was coerced into answering questions.
At trial in this case, Louisiana State Trooper Michael Allen testified as follows: in March 2016, defendant was advised of his Miranda rights and signed the form indicating that he understood his rights; at the time, defendant stated that he did not *1294 know the victim and he did not want to answer any questions pertaining to murder or rape; defendant later recanted and said he wanted to answer questions; defendant then stated that he knew the victim from when she was employed as a correctional officer; and defendant refused to answer any questions regarding the homicide.
Based upon this record, defendant has failed to establish that he was coerced into answering any questions after he invoked his rights. Trooper Allen specifically testified that defendant refused to answer questions and that the only information obtained from him during the interview was that he knew the victim. The information that defendant was previously incarcerated at the facility where the victim was employed and knew the victim was also introduced into evidence through the testimony of several other witnesses during trial. Thus, defendant has failed to demonstrate a reasonable probability that but for defense counsel's failure to file a motion to suppress his statement, the result of the trial would have been different. Consequently, this assignment of error lacks merit.
Error Patent
A review of the appellate record demonstrates that the Uniform Commitment Order signed by the trial judge does not accurately reflect the sentence imposed. The sentencing transcript shows that defendant's life sentence was properly imposed without the benefit of parole, probation or suspension of sentence. However, the Uniform Commitment Order does not mention the denial of benefits. Accordingly, this matter shall be remanded to the trial court for the sole purpose of correcting the Uniform Commitment Order to reflect that the defendant's sentence was imposed without benefits. See State v. Robertson , 51,225 (La. App. 2 Cir. 4/12/17), 216 So.3d 1137, writ denied , 2017-0937 (La. 4/6/18), 240 So.3d 185.
CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed. This matter is remanded to the district court, which is instructed to correct the Uniform Commitment Order to reflect that the defendant's sentence was imposed without the benefit of parole, probation or suspension of sentence.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.