Judgment rendered August 14, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 992,
La. C. Cr. P.

No. 52,652-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA          Appellee

versus

EDDIE HILLIARD, JR.          Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Morehouse, Louisiana
Trial Court No. 2016-50F

Honorable C. Wendell Manning, Judge

* * * * *

LOUISIANA APPELLATE PROJECT      Counsel for Appellant
By: Meghan Harwell Bitoun

EDDIE HILLIARD, JR.      Pro Se

ROBERT S. TEW      Counsel for Appellee
District Attorney

JOHN G. SPIRES
STEPHEN T. SYLVESTER
Assistant District Attorneys

* * * * *

Before PITMAN, GARRETT, and THOMPSON, JJ.

**GARRETT, J.**

Following a jury trial, the defendant, Eddie Hilliard, Jr., was convicted as charged of second degree rape and attempted second degree rape. He was sentenced, respectively, to 40 years at hard labor without benefit of parole, probation, or suspension of sentence, and 20 years at hard labor without benefit of parole, probation, or suspension of sentence. The trial court imposed the sentences concurrently. A timely motion to reconsider sentence was denied. The defendant appeals. We affirm the defendant's convictions and sentences.

## FACTS

On the night of Saturday, October 10, 2015, the 14-year-old victim spent the night at the apartment of her aunt, along with her sister and several young cousins. The defendant, who was the aunt's boyfriend and resided at the apartment, was present that night. The next afternoon, the aunt took the victim and her sister back to their own home. The victim's mother noticed that the victim was unusually reticent, teary-eyed, and refused to eat. On Monday, October 12, 2015, the victim went to school where she immediately sought out a paraprofessional with whom she was well acquainted, Carla Floyd.[1] Ms. Floyd said she could tell something was wrong with the girl and took her to an office where they could talk privately. The victim broke down and tearfully confided that she had been raped Saturday night by the defendant. She gave Ms. Floyd some details of what

---

[1] This witness' maiden name is Massey and her subsequent married name is Floyd. Consequently, she is referred to in the record alternatively as "Ms. Massey," "Ms. Floyd," and "Ms. Massey-Floyd." We elect to call her "Ms. Floyd" in the opinion.

had happened and said that there had been two incidents that night. Ms. Floyd alerted the principal, who called the victim's parents and the police.

The victim was taken to a hospital where she was interviewed and examined by Teresa Daniel, a sexual assault nurse examiner ("SANE"). After getting a medical history and interviewing the victim about the details of the assault, Ms. Daniel conducted a physical examination of the victim and collected evidence, which was submitted to law enforcement as part of the physical evidence recovery kit ("PERK"). This included oral, perineal, anal, and external genitalia swabs.

On October 19, 2015, the victim was interviewed at the Children's Advocacy Center of Northeast Louisiana ("CAC"). The interview, which was recorded, was conducted by Tiffany O'Neal, a forensic interviewer, and monitored from another room by the center's director, Jennifer Graves, and Captain Anthony Evans of the Bastrop Police Department. During the interview, the victim stated that the defendant raped her anally and vaginally. He also tried to put his penis in her mouth.

The victim provided the clothing she was wearing at the time of the offense to the police. The undergarments, along with the PERK kit, were submitted to the crime lab for testing. After the police received the test results from the crime lab, an arrest warrant was obtained, and the defendant was arrested on January 25, 2016. By bill of information filed February 2, 2016, he was charged with one count of second degree rape and one count of attempted second degree rape.

The defendant's trial began on November 6, 2017. At various points during jury selection, the trial court conducted evidentiary hearings. On November 7, 2017, the trial court held a hearing on the state's motion of

2

intent to use at trial the recorded testimony of a protected person, i.e., the CAC video recording of the victim's testimony. After hearing the testimony of Ms. O'Neal, the CAC interviewer, and reviewing the recording *in camera*, the trial court held that the state proved the videotaped interview met the statutory requirements of competency set forth in La. R.S. 15:440.4 and the statutory requirements for admissibility established in La. R.S. 15:440.5.[2] On November 8, 2017, the trial court held a competency hearing on the victim, who was then 16 years old. The trial court found that she was competent to testify, specifically concluding that she had a great understanding of the gravity of the situation and the difference between truth and falsehood. This was followed by a hearing on the admissibility of Ms. Floyd's testimony under La. C.E. art. 801(D)(1)(d) as the first person to whom the rape was reported; the trial court ruled that it was admissible as nonhearsay under that provision.

At trial, the state presented the testimony of the victim; Ms. Floyd, the first person to whom the victim reported the rape; the victim's mother; Captain Evans (now the assistant police chief of the Bastrop Police Department); Ms. Daniel, the SANE nurse; Ms. O'Neal, the CAC interviewer; and Michelle Vrana, the DNA section supervisor and a forensic DNA analyst at the North Louisiana Criminalistics Laboratory.[3] The video of the victim's CAC interview was played for the jury during Ms. O'Neal's testimony. Ms. Vrana testified that the Y STR haplotype profile obtained from the victim's perineal swab and the partial Y STR haplotype profile

---

[2] The trial court signed a written ruling to this effect on November 14, 2017.

[3] Because neither the analyst who conducted the original analysis of the evidence nor the analyst who technically reviewed her analysis worked at the crime lab at the time of trial, Ms. Vrana testified as to the lab's findings.

obtained from the victim's anal swab were consistent with the Y STR haplotype obtained from the defendant's reference sample. Consequently, the defendant and all males in his paternal lineage could not be excluded as a donor. By her mathematical calculations, approximately 22,500 African-American males in the United States could meet that criteria. While the defendant chose not to testify, he presented the testimony of the victim's aunt, who was his girlfriend at the time of the offenses. The jury unanimously convicted the defendant as charged on both counts.

The defendant filed a motion for post-verdict judgment of acquittal, which was primarily based upon inconsistencies in the victim's testimony; it was denied. He also filed a motion for new trial on the same grounds. However, he later supplemented his motion for new trial to allege that the victim had admitted to his daughter that she lied about him raping her. At a hearing, the defendant's daughter testified on direct examination that the conversation occurred a few days after the trial. On cross-examination, she said it happened before the trial and that she told her parents about it. On redirect, she admitted that she was not "absolutely sure" of the date. A friend of the defendant's daughter testified that she was on the phone with the daughter and overheard the victim's admission. She said that she immediately told her mother. However, the friend testified that she attended the defendant's trial and that she was sure this incident happened before the trial. The trial court denied the motion for new trial. It questioned the veracity and motives of the witnesses, as well as the timing of the supposedly "newly discovered evidence."

In July, 2018, the trial court sentenced the defendant to the maximum penalty for each offense, 40 years at hard labor without benefit of parole,

4

probation, or suspension of sentence for second degree rape, and 20 years at hard labor without benefit of parole, probation, or suspension of sentence for attempted second degree rape. It ordered that the sentences be served concurrently with each other, but consecutively to any other sentence. The defendant's timely motion to reconsider sentence was denied.

The defendant appeals. His appellate counsel argues that the trial court erred in the following respects: denying the motion for new trial; permitting the state to play the CAC video for the jury; admitting Ms. Floyd's testimony; allowing the CAC interviewer and the SANE nurse to testify as experts; and imposing an excessive sentence. The defendant also raised three *pro se* assignments of error in which he claimed that the trial court failed to protect his right of review based on a complete record and that his trial counsel was ineffective for failing to object to improper statements allegedly made by the prosecutor during closing arguments or move for a mistrial based on prosecutorial misconduct.

## MOTION FOR NEW TRIAL

The defendant contends that the trial court erred in denying his motion for new trial, which was based upon testimony from his daughter and her friend that the victim had admitted lying about him raping her.

### *Law*

In order to obtain a new trial based on newly discovered evidence, the defendant has the burden of showing that (1) the new evidence was discovered after trial, (2) the failure to discover the evidence at the time of the trial was not caused by lack of diligence, (3) the evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably have produced a different verdict. La. C. Cr. P. art. 851(B)(3);

5

*State v. Bell*, 09-0199 (La. 11/30/10), 53 So. 3d 437, *cert. denied*, 564 U.S. 1025, 131 S. Ct. 3035, 180 L. Ed. 2d 856 (2011); *State v. Matthews*, 50,838 (La. App. 2 Cir. 8/10/16), 200 So. 3d 895, *writ denied*, 16-1678 (La. 6/5/17), 220 So. 3d 752.

In ruling on a motion for a new trial based on newly discovered evidence, the trial judge's "duty is not to weigh the new evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's judgment." *State v. Prudholm*, 446 So. 2d 729 (La. 1984); *State v. Thomas*, 48,530 (La. App. 2 Cir. 12/4/13), 131 So. 3d 84. The decision of whether to grant or deny a motion for new trial is within the trial judge's sound discretion. *State v. Brisban*, 00-3437 (La. 2/26/02), 809 So. 2d 923; *State v. Matthews*, *supra*.

### *Discussion*

The basis for the defendant's motion for new trial was newly discovered evidence, i.e., an alleged conversation between the victim and the defendant's daughter in which the victim admitted lying about the defendant raping her. However, the testimony of the defendant's daughter and her friend who claimed to have overheard the admission did not prove that this conversation occurred after the trial or that the failure to discover the evidence at the time of the trial was not caused by lack of diligence on the part of the defense. The friend unequivocally testified that the incident occurred before the trial, which she attended. After initially testifying that the conversation happened after the trial, the defendant's daughter stated on cross-examination that it was before the trial. Then she said she did not know when it occurred. On redirect, she said she was not "absolutely sure"

when it took place. Both girls testified that they told adults about the conversation; however, they did not meet with the defense's investigator until February 2018, about three months after the trial.

The defense failed to show that the new evidence was discovered after trial and that the failure to discover the evidence was not caused by lack of diligence. Furthermore, the trial court strongly questioned the credibility of the two witnesses. It specifically referred to the inconsistencies in their testimony, as well as its observations of their behavior and responses on the witness stand. Therefore, the trial court correctly denied the motion for new trial. This assignment lacks merit.

## CAC VIDEO

The defendant argues that the trial court's admission of the CAC video evidence did not adhere to the requirements of La. R.S. 15:440.4, and accordingly violated his rights under the Sixth Amendment Confrontation Clause. Specifically, the defendant asserts that the procedures did not adequately protect against leading questions and, thus, failed La. R.S. 15:440.4(A)(3). He asserts that the CAC interviewer received questions through an earpiece from both the police and her supervisor and that those questions were not recorded. He contends that, from those questions, the victim began to discuss the second offense for which Hilliard was ultimately charged.

### *Law*

La. R.S. 15:440.4 provides, in relevant part:

A. A videotape of a protected person may be offered in evidence either for or against a defendant. To render such a videotape competent evidence, it must be satisfactorily proved:

7

(1) That such electronic recording was voluntarily made by the protected person.

(2) That no relative of the protected person was present in the room where the recording was made.

(3) That such recording was not made of answers to interrogatories calculated to lead the protected person to make any particular statement.

(4) That the recording is accurate, has not been altered, and reflects what the protected person said.

(5) That the taking of the protected person's statement was supervised by a physician, a social worker, a law enforcement officer, a licensed psychologist, a medical psychologist, a licensed professional counselor, or an authorized representative of the Department of Children and Family Services.

La. R.S. 15:440.5 states, in relevant part:

A. The videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if:

(1) No attorney for either party was present when the statement was made;

(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;

(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;

(4) The statement was not made in response to questioning calculated to lead the protected person to make a particular statement;

(5) Every voice on the recording is identified;

(6) The person conducting or supervising the interview of the protected person in the recording is present at the proceeding and available to testify or be cross-examined by either party;

(7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and

(8) The protected person is available to testify.

## *Discussion*

The trial court did not abuse its discretion in admitting the CAC video. The testimony of Ms. O'Neal established that she and the victim were alone in the interview room, under the supervision of law enforcement and Ms. O'Neal's supervisor. Ms. O'Neal testified that the recording had not been altered. The defendant does not dispute that he observed the recording prior to its admission. Ms. O'Neal testified that she was trained to interview witnesses without asking questions which are calculated to get specific answers. Moreover, she testified that she routinely taps her earpiece at the end of the interview in an effort to receive follow-up or clarification questions, which are based on what the child has said, from law enforcement and her supervisor. However, she then rewords them into nonleading, open-ended questions. In this case, Ms. O'Neal said she did not recall whether any further questions were asked after she tapped on her earpiece.[4] Further, both the victim and Ms. O'Neal were available to testify at trial and were both cross-examined. Accordingly, this assignment of error is without merit.

### FIRST REPORTER TESTIMONY

The defendant argues that the admission of the hearsay statements that the victim made to Ms. Floyd was erroneous. Specifically, he asserts that the initial statement that the victim made to Ms. Floyd was inconsistent with the statements she made at the pretrial hearing. Ms. Floyd testified that the victim told her of two incidents, but at the pretrial hearing, the victim could

---

[4] Our review of the CAC video demonstrated that Ms. O'Neal tapped her earpiece one time, near the end of the interview. By this point, the victim had given Ms. O'Neal all the pertinent details of the offenses. After Ms. O'Neal tapped her earpiece, no significant questions were asked.

Furthermore, we have reviewed the recording played for the jury and confirmed that there were no leading or improper questions.

not remember discussing a second incident nor could she remember a second incident.

*Law*

Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay is inadmissible except as provided by law. La. C.E. art. 802.

A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's testimony and is one of an initial complaint of sexually assaultive behavior. La. C.E. art. 801(D)(1)(d).

Admission of even hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial. *State v. Patterson*, 50,305 (La. App. 2 Cir. 11/18/15), 184 So. 3d 739, *writ denied*, 15-2333 (La. 3/24/16), 190 So. 3d 1190.

*Discussion*

At the pretrial hearing on the admissibility of Ms. Floyd's testimony, which occurred more than two years after the assault, the victim was initially unable to recall certain portions of the attack and the exact details she shared with Ms. Floyd two days after the incident. The victim was subsequently allowed to view the CAC video prior to the trial court's ruling on the admissibility of Ms. Floyd's testimony under La. C.E. art. 801(D)(1)(d). When the victim was recalled to the stand, she testified that, after viewing the CAC video, she could recall more details, including the defendant trying to force her to perform oral sex on him. The victim, who was only 14 years old at the time of the rape and 16 years old when the case was tried, testified

10

that the event involving the defendant was "very traumatic" and had happened "so long ago" she did not remember some of it until she viewed the tape. The trial court ruled that the victim's statements to Ms. Floyd were not hearsay and, pursuant to La. C.E. art. 801(D)(1)(d), would be admissible at trial.

At trial, the victim testified that she was sleeping on her stomach on the sofa in the living room of her aunt's apartment on Saturday night when she was awakened by someone touching the back of her leg. The defendant pushed her head down in the sofa. He pulled down the clothing she wore below her waist roughly enough to tear her jogging pants. He raped her anally and vaginally. He stopped when an infant sleeping in the same room began to cry. The victim testified that she ran to the bathroom because she was bleeding. Although she shut and locked the door, someone jiggled the doorknob. Eventually, she opened the door and no longer saw the defendant in the living room. She went into a bedroom where her oldest cousin was, but she did not confide in the girl about the attack. She later returned to the living room and tried to go back to sleep on the sofa. The defendant returned and tried to get her to perform oral sex on him. She refused. He said "round two" would occur when her aunt went to work on Sunday morning. However, the victim stayed close to her oldest cousin during the day until her aunt returned from work and took her home. She did not tell her parents or sister what happened, even though her mother asked her what was wrong. On Monday morning, she sought out Ms. Floyd at school and told her she had been raped. On cross-examination, the victim was thoroughly questioned about her pretrial testimony in which she failed to recall the second incident.

Ms. Floyd testified at trial that on Monday morning she heard the victim ask for her. She could tell something was wrong and took the girl to an office where they could speak privately. When she asked what was wrong, the victim broke down crying and told Ms. Floyd that she had been raped Saturday night by her aunt's boyfriend, the defendant. The victim said the defendant got on top of her while she was on the couch and pulled down her pants. In response to Ms. Floyd's question as to whether this was the only time, the victim said "a while later it happened again" but gave no details. Ms. Floyd testified that she asked the victim if she had told anyone else about the incident; the victim said she had not and she was too scared to tell her parents.

Our review reveals that the requirements of La. C.E. art. 801(D)(1)(d) were satisfied. The victim testified at trial consistently with the content of her initial complaint to Ms. Floyd, and she was subjected to cross-examination. Additionally, the victim's prior statement was an "initial complaint of sexually assaultive behavior." The testimony of both the victim and Ms. Floyd established that Ms. Floyd was the first person in whom the victim confided. Consequently, the victim's statements to Ms. Floyd were properly admitted as nonhearsay.

This assignment of error lacks merit.

## EXPERT WITNESSES

The defendant contends that neither the CAC interviewer nor the SANE nurse should have been accepted by the trial court as expert witnesses in their respective fields.

***Law***

La. C.E. art. 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.

Trial courts are vested with great discretion in determining the competence of an expert witness, and rulings on the qualification of a witness as an expert will not be disturbed unless there was a clear abuse of that discretion.  *State v. Critton*, 52,058 (La. App. 2 Cir. 8/22/18), 251 So. 3d 1281, *writ denied*, 18-1515 (La. 2/25/19), 266 So. 3d 292; *State v. Farris*, 51,094 (La. App. 2 Cir. 12/14/16), 210 So. 3d 877, *writ denied*, 17-0070 (La. 10/9/17), 227 So. 3d 828.

***Discussion***

The defendant objected at trial to Ms. O'Neal being accepted as an expert in forensic interviewing, asserting that there was no oversight in her field because the Louisiana CAC (which was in the process of seeking accreditation by the National CAC) used only peer review, where members conduct interviews and then critique each other, to establish performance standards for their work.  The trial court found that the factors set forth in La. C.E. art. 702 were met and cited as instructive the case of *State v. Washburn*, 2016-335 (La. App. 3 Cir. 11/2/16), 206 So. 3d 1143, *writ denied*, 16-2153 (La. 9/15/17), 225 So. 3d 488.

13

We find that the trial court did not abuse its discretion in accepting Ms. O'Neal as an expert in her field. She testified that she had a bachelor's degree from Louisiana Tech in family and child studies. Since being hired as a forensic interviewer by CAC in 2012, she had completed the 40-hour training at the National CAC, received advanced forensic interviewer training, and attended conferences. She also participated in peer review by the Louisiana CAC. At the time of trial, she had interviewed about 750 children.[5]

In a similar vein, the defendant objected at trial to Ms. Daniel being accepted as an expert witness as a SANE nurse. He asserted that her field's peer review was inadequate because Ms. Daniel testified that she was not aware of anyone's certification being revoked due to peer evaluations.

We find that the trial court did not abuse its discretion in accepting Ms. Daniel as an expert in her tendered field of expertise. Ms. Daniel testified that, to qualify as a SANE nurse, one had to be a registered nurse for a minimum of two years and complete a 40-hour class and between 130 to 150 hours of clinical time. To maintain certification, one is also required to obtain 45 hours of continuing education every three years. The curriculum is set by the International Association of Forensic Nurses ("IAFN"). Peer reviews were conducted pursuant to IAFN standards. Since her certification as a SANE nurse in 2007, she had conducted about 40 exams a year on sexual assault victims.

---

[5] In the *Washburn* case, the trial court accepted as an expert witness a forensic interviewer with a similar training background, but who had only conducted about 120 interviews. The appellate court found no abuse of the trial court's discretion.

The record indicates that both witnesses were properly qualified to testify as expert witnesses. The defendant's assignments of error are without merit.

## EXCESSIVE SENTENCES

The defendant asserts that the trial court erred in imposing excessive sentences. He maintains that he was not the worst offender deserving of maximum sentences.

### *Law*

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry*, *supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. DeBerry*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208.

As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Meadows*, *supra*. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Duncan*, 47,697 (La. App. 2 Cir. 1/16/13), 109 So. 3d 921, *writ denied*, 13-0324 (La. 9/13/13), 120 So. 3d 280. The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996); *State v. Jackson*, 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764.

The sentencing range for second degree rape is five to 40 years at hard labor, with at least two years of the sentence imposed without benefit of probation, parole, or suspension of sentence. La. R.S. 14:42.1. La. R.S. 14:27(D)(3) provides that the sentence for an attempt shall be imprisonment

16

"in the same manner as for the offense attempted" not to exceed one-half of the longest term of imprisonment prescribed for the offense so attempted.

### *Discussion*

In imposing sentence, the trial court fully complied with the sentencing guidelines of La. C. Cr. P. art. 894.1. It reviewed the 46-year-old defendant's extensive criminal history, noting that his first felony conviction occurred when he was approximately 18 years old. His felony convictions were for simple burglary, distribution of cocaine, and possession of cocaine with intent to distribute. The court, which had the benefit of a presentence investigation ("PSI") report, also considered his social history and the facts of the instant offenses. In its articulation of the 894.1 factors, the court found no mitigating factors but found several aggravating factors. Specifically, the court found that there was an undue risk of the defendant committing another crime during a period of a suspended sentence or probation; the defendant was in need of correctional treatment or custodial environment most effectively provided by commitment to an institution; a lesser sentence would deprecate the seriousness of the offenses; the defendant's conduct manifested deliberate cruelty to the young victim; he knew or should have known the victim was particularly vulnerable or incapable of resistance due to her extreme youth; and the defendant used his status as the boyfriend of the victim's aunt to gain access to the victim and to facilitate commission of the offenses. The trial court also reviewed the statements contained in the PSI report. The defendant insisted that he was wrongly accused and claimed that the victim was molested by another family member. The victim and her parents described the emotional and

psychological harm she suffered as a result of the defendant's actions. Not only had she struggled in school, but she had also contemplated suicide.

We further find that the sentences were not constitutionally excessive. The defendant, who was then 43 years old, attacked a 14-year-old girl while she was spending the night at her aunt's apartment. He pushed the girl into the couch, pulled her clothes down forcefully enough to tear them, pinned her down, and raped her. He later returned a second time and tried to assault her again. He threatened her that it would happen again after her aunt went to work. The defendant has an extensive criminal history and has repeatedly failed to benefit from leniency in sentencing. Our sense of justice is not shocked as imposition of the maximum sentences was warranted in the instant case. This assignment of error is meritless.

## COMPLETE APPELLATE RECORD

In his first *pro se* assignment of error, the defendant argues that the trial court erred in failing to protect his right of review based on a complete record.

### *Law*

La. C. Cr. P. art. 914.1 provides, in relevant part:

(A) The party making the motion for appeal shall, at the time the motion is made, request the transcript of that portion of the proceedings necessary, in light of the assignment of errors to be urged. Not later than five days after the motion, the opposing party may designate in writing the transcript of that portion or portions of the proceedings necessary to oppose the appeal.

La. R.S. 46:1844(W) requires that the identity of minor crime victims and victims of sex offenses be protected. Accordingly, appellate records provided to criminal defendants for preparation of *pro se* briefs are redacted to remove any information identifying the victim of a sex crime. *See State v.*

*Ashley*, 44,655 (La. App. 2 Cir. 9/23/09), 22 So. 3d 1045, *writ denied*, 09-2305 (La. 4/23/10), 34 So. 3d 271.

### *Discussion*

The defendant argues that the portion of the transcript containing the district attorney's closing arguments was "heavily altered and redacted" and that "improper statements" made by the district attorney had been "completely removed." However, beyond his own conclusory statements in brief, the defendant has failed to provide any support for these contentions.

The appellate record which the defendant reviewed to prepare his *pro se* assignments of error and brief was redacted to remove the victim's name and other information which would tend to identify her. There is no evidence before us suggesting that the record was altered in any other manner.

This assignment of error is meritless.

### INEFFECTIVE COUNSEL

In conjunction with the above assignment of error, the defendant raises two other *pro se* assignments of error in which he contends that his trial counsel was ineffective because he failed to object to "improper statements" made by the district attorney during closing arguments or move for a mistrial on the basis of "prosecutorial misconduct." We consider these assignments of error together.

### *Law*

A claim of ineffective assistance of counsel is analyzed under the two-prong test developed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish that his attorney was ineffective, the defendant first must show that

counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. *Strickland*, *supra*; *State v. Moore*, 48,769 (La. App. 2 Cir. 2/26/14), 134 So. 3d 1265, *writ denied*, 14-0559 (La. 10/24/14), 151 So. 3d 598. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. *State v. Bell*, 51,312 (La. App. 2 Cir. 5/17/17), 222 So. 3d 79.

Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Strickland*, *supra*; *State v. Moore*, *supra*. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. *Strickland*, *supra*; *State v. Bell*, *supra*.

Generally, a claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief ("PCR") in the trial court. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. *State v. Mansfield*, 50,426 (La. App. 2 Cir.

20

2/24/16), 190 So. 3d 322. However, when the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. *State v. Critton*, *supra*.

The law requires closing argument to be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. La. C. Cr. P. art. 774; *State v. Huff*, 27,212 (La. App. 2 Cir. 8/23/95), 660 So. 2d 529, *writ denied*, 96-0212 (La. 5/1/97), 693 So. 2d 754.

The district attorney is afforded considerable latitude in making argument to the jury. *State v. Tucker*, 49,950 (La. App. 2 Cir. 7/8/15), 170 So. 3d 394, *writ not cons.*, 15-1517 (La. 3/9/18), 237 So. 3d 1193. Further, a trial court has broad discretion in controlling the scope of closing arguments. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000); *State v. Wilson*, 50,589 (La. App. 2 Cir. 5/18/16), 196 So. 3d 614, *writ denied*, 16-1102 (La. 5/12/17), 221 So. 3d 72. Even in the case of a prosecutor exceeding the bounds of proper argument, a reviewing court will not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the verdict. *State v. Casey*, *supra*; *State v. Tucker*, *supra*. Even where the prosecutor's statements are improper, credit should be given to the good sense and fairness of the jurors who have heard the evidence. *State v. York*, 48,230 (La. App. 2 Cir. 8/7/13), 121 So. 3d 1226, *writ denied*, 13-2154 (La. 3/21/14), 135 So. 3d 617.

The contemporaneous objection rule applies to claims that the prosecutor made an improper closing argument. *State v. Williams*, 46,674

21

(La. App. 2 Cir. 12/14/11), 81 So. 3d 220.  An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841.  *State v. Jones*, 49,948 (La. App. 2 Cir. 9/30/15), 178 So. 3d 1075.

### *Discussion*

The prosecutor concluded his initial closing argument as follows:

> That young lady right there knew she got raped and he did it. That's what she said throughout this testimony.  That's what she said throughout this testimony.  This is what happened to me.  You heard me ask her this; do you want to be here?  No. Did you hear the way she was ostracized by people in her home, family, after this happened?  Do you think she would put herself through that and come in here and tell you this if it wasn't true?  Eddie Hilliard raped [the victim].  Don't y'all rape her again.  Thank you.

The defendant's trial counsel made no contemporaneous objection to the comment about raping the victim again.  Therefore, the defendant is precluded from raising a claim related to it on appeal.  However, the defendant asserts that his trial counsel was ineffective for failing to object to the "improper statements" made during closing arguments or move for a mistrial based upon "prosecutorial misconduct."[6]  Consequently, the defendant must meet the two-part test outlined in *Strickland v. Washington*, *supra.*  While generally an ineffective assistance of counsel claim is better suited for post-conviction relief, this record is sufficient to address this claim on direct appeal.

---

[6] The defendant claims that the prosecutor made other improper statements during closing arguments, including referring to him as a "monster."  However, he claims that they were removed from the "altered version" of the trial transcript sent to him for his review.  We have compared the transcript of the state's closing arguments contained in the redacted appellate record sent to the defendant to the unredacted record utilized by this court in its review.  The only differences between the two are the redactions made pursuant to La. R.S. 46:1844(W).

22

There is no showing that any comment by the prosecutor during his closing argument deprived the defendant of a fair trial, *i.e.*, a trial whose result is reliable. Nor is there any indication that the outcome of the trial would have been different had trial counsel objected or moved for a mistrial. The defendant has provided nothing more than conclusory allegations. Prior to the start of the trial and again in its jury instructions, the trial judge instructed the jury that closing arguments are not evidence. Additionally, the prosecutor himself told the jurors during his rebuttal argument that what he was saying to them was not evidence. Even if the prosecutor's comments exceeded the bounds of a closing argument, the evidence against the defendant was more than sufficient to support the verdict. Accordingly, the defendant has failed to meet his burden under *Strickland*. These assignments of error are without merit.

## CONCLUSION

The defendant's convictions and sentences are affirmed.

**AFFIRMED.**